UNITED STATES of America, Appellee,

v.

Wilbert B. WARREN, Appellant.

No. 93–3062.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 12, 1994.

Decided Dec. 13, 1994.

Rehearing Denied Feb. 16, 1995.

On Appeal from the United States District Court for the District of Columbia (Criminal Action No. 89cr00386–01).

A.J. Kramer, Federal Public Defender, argued the cause and submitted the briefs, for appellant.

Richard L. Chamovitz, Asst. U.S. Atty., argued the cause, for appellee. With him on the brief were Eric H. Holder, Jr., U.S. Atty., John R. Fisher, Thomas C. Black, and Corbin A. Weiss, Asst. U.S. Attys.

Before: EDWARDS, Chief Judge, SILBERMAN and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

HARRY T. EDWARDS, Chief Judge:

In 1989, United States Park Police officers executing a search warrant at an apartment in the District of Columbia found appellant Wilbert B. Warren in a room littered with drugs and drug paraphernalia. Their search uncovered a handgun in the same room, hidden beside a mattress on the floor. Warren was arrested, tried, and convicted of possession of crack cocaine with intent to distribute, use of a firearm during and in relation to a drug trafficking crime, and aiding and abetting of both offenses.

On appeal, Warren raises four challenges to the proceedings below. First, he contends that the District Court erred in denying his motion to suppress evidence seized during the search because the search warrant was not supported by probable cause. Second, Warren claims the District Court improperly denied his motion to discover the identity of a confidential informant who supplied the information upon which Park Police officers relied in seeking the warrant. Third, Warren challenges the District Court's decision during trial to exclude three written statements by Park Police officers. In these statements, the officers indicated that the apartment was leased to a person other than Warren, and identified other occupants of the

apartment as known sellers of crack cocaine. Last, Warren argues that the District Court erred in calculating his base offense level under the federal Sentencing Guidelines.[1]

We reject Warren's contentions. We hold that a reliable informant's tip, combined with a controlled drug buy, established probable cause for the search in this case. We also hold that the District Court acted within its discretion in concluding that the Government's interest in preserving the confidentiality of a reliable informant outweighed Warren's claimed need for the informant's identity. As to the Park Police officers' statements, we agree with Warren that the District Court erred in failing to admit one of these statements under an exception to the rule barring hearsay evidence, and in finding the statement more prejudicial than probative. However, we conclude that the District Court's error was harmless. With regard to the other two statements, we hold that, even if the District Court erred in excluding them, its error was not so obvious as to satisfy the plain error standard that we apply in this case because Warren failed to raise his challenge before the District Court. Finally, we hold that Warren waived his challenge to the District Court's application of the Sentencing Guidelines by making an inconsistent argument to the sentencing judge. Accordingly, we affirm the judgment of conviction.

## I. BACKGROUND

### A. The Search

On September 12, 1989, United States Park Police officers, along with a S.W.A.T. team, arrived at 76 Galveston Place, S.W., in the District of Columbia, to execute a search warrant. A federal magistrate had issued the search warrant the previous day based

---

1. Warren initially also challenged the constitutionality of the disparity in federal sentencing between offenses involving cocaine powder and cocaine base, and the sufficiency of the evidence introduced by the Government to support his conviction for use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (1988). However, Warren recognized in his reply brief that our decision in *United States v. Thompson*, 27 F.3d 671 (D.C.Cir.), *petition for cert. denied*, —— U.S. ——, 115 S.Ct. 650, 130 L.Ed.2d 554 (1994), preclud-

ed his attack on the constitutionality of the federal Sentencing Guidelines. *Thompson*, which we rendered after Warren filed his opening brief, upheld the Guidelines against a constitutional challenge identical to Warren's. *Id.* at 678–79. Additionally, Warren's counsel at oral argument acknowledged that the Government's evidence was sufficient to sustain his conviction under section 924(c) in light of the standards we recently announced for such convictions in *United States v. Bailey*, 36 F.3d 106 (D.C.Cir.1994) (*en banc*).

upon an affidavit prepared by Park Police Officer Gerald T. Holman, Sr. In the affidavit, Officer Holman stated that a "confidential reliable source" had advised Park Police within the previous seven days that crack cocaine was being stored and sold at 76 Galveston Place, S.W., apartment number one. Appendix of Appellant ("App.") 6. Holman stated that his informant had "proven reliable in the past," having provided information that "resulted in the seizure of large quantities of cocaine, about 8 guns and about 52 defendants." *Id.* The informant had "never been proven unreliable," Holman said, noting that every search warrant issued pursuant to information provided by the informant yielded illegal drugs or firearms. *Id.*

In the affidavit, Officer Holman also described a controlled drug buy conducted within the previous 72 hours in which the informant entered the apartment building with Park Police funds and emerged a short time later with a rock of crack cocaine. According to the affidavit, "[t]he source stated he had purchased the substance from apt # 1." *Id.* The affidavit described the apartment as "located on the first floor, first apartment to the right upon entering the building and is marked with # 1." *Id.* at 5. The same description appeared on the search warrant itself. *Id.* at 7.

When the "raid" team arrived at 76 Galveston Place, S.W., then-Sergeant Ronald Schmidt announced the officers as police with a search warrant. In response, two persons who had been standing in front of the building ran inside. They were Jocelyn Gause, a Jamaican man matching the description of a person who police had identified as having engaged in a recent narcotics transaction, and Edward Smith. With Schmidt in pursuit, the two men ran into the first apartment on the right upon entering the building, and slammed the door. Schmidt again announced that the officers had a search warrant, kicked open the door, and ran into the apartment.

Lieutenant Berberich followed Schmidt into the apartment and ran into the first bedroom on the right, where he encountered Warren and a woman named Deborah Washington standing in the middle of the room.[2] He also saw crack cocaine, money, crack pipes, and ziplock bags strewn on a mattress on the floor. He searched Warren and Washington, and asked Warren if there were any guns in the house. Warren responded, "Yes," and pointed to the head of the mattress where it abutted the wall. Trial Tr. (Oct. 13, 1992) at 28, *reprinted in* Record Material for Appellee ("Rec.Mat.") § H. Looking quickly between the mattress and the wall, Berberich saw a revolver. He then left the evidence for Officer Ramos to collect.

Officer Ramos collected a total of 36.12 grams of crack, a portion of which was packaged in ziplock bags. Amidst this contraband, the officer found 2.47 grams of crack cocaine in a cigarette package on the mattress. Ramos also recovered a loaded .38–caliber revolver from between the mattress and the wall, along with nine rounds of ammunition. He collected $1,309 from the bedroom. Of this amount, Ramos found $1,107, along with Warren's driver's license, in the pockets of a pair of jeans lying on the mattress. Elsewhere in the bedroom, Ramos found a green notebook that appeared to be a ledger for drug sales. Ramos also found numerous papers bearing Warren's name, including an automobile sales contract and a credit union receipt. In a second bedroom, Ramos found suitcases holding numerous papers such as hospital forms, a birth certificate, and a tax return, almost all of which bore the name of Edward Smith.

The officers arrested Warren and took him to the Park Police station in Anacostia, where Warren told Officer David Fennimore that he had been living in the Galveston Place apartment with a man named Tony (a nickname for Edward Smith), but stated that the drugs and guns in the apartment belonged to unidentified Jamaicans. Warren said these Jamaicans were not present during the search, but had used guns and vio-

---

2. When the search occurred, the occupants of the apartment were Warren, Washington, Smith, Gause, and an unidentified woman.

lence to force him and Tony to permit the Jamaicans to sell drugs from the apartment. As compensation, Warren said, the Jamaicans paid him three rocks of crack cocaine a day.

### B. Indictment and Pretrial Proceedings

On October 12, 1989, a grand jury indicted Warren and Smith on charges of possession with intent to distribute more than five grams of cocaine base, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(B)(iii) (1988); use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (1988); making available a place for storing and distributing drugs, in violation of 21 U.S.C. § 856 (1988); and aiding and abetting of each offense, in violation of 18 U.S.C. § 2 (1988).[3]

Before trial, Warren moved to suppress all evidence seized in the search, and to discover the identity of Officer Holman's confidential informant. Warren argued that the evidence should be suppressed pursuant to the Fourth Amendment of the United States Constitution because the affidavit supporting the search warrant failed to demonstrate probable cause, and because the warrant failed to describe the apartment with particularity. At a motions hearing held on July 6, 1992, Warren presented evidence from an investigator that there was no apartment number one at 76 Galveston Place, S.W., at the time when the police raided the building. Instead, the first apartment on the right was apartment "B," while the other first floor apartment was "A." As to the identity of the confidential informant, Warren argued that only the informant could testify whether someone other than Warren sold drugs during the controlled buy.

The trial judge denied both motions in memorandum orders issued on August 20 and 21, 1992. As to the motion to suppress, the judge held that the controlled purchase of narcotics, in conjunction with the information provided by the reliable informant, established probable cause. *United States v. Warren*, Cr. No. 89–0386(TAF), slip op. at 5–6 (D.D.C. Aug. 20, 1992), *reprinted in* App. 12–13. The judge also held that the war-

rant's specific description of the place to be searched as the first apartment on the right satisfied the Fourth Amendment's particularity requirement, despite the warrant's incorrect statement that the apartment was marked "# 1." *Id.* at 9–10, *reprinted in* App. 16–17. As to the motion to discover the informant's identity, the trial judge found that the public interest in protecting the informant's identity outweighed Warren's need for the information because the informant was not involved in any of the charged activity, and because others could testify as to the identity of the persons who sold drugs from the apartment. *United States v. Warren*, Cr. No. 89–0386(TAF), slip op. at 5–6 (D.D.C. Aug. 21, 1992), *reprinted in* App. 25–26.

### C. Trial and Sentencing

At trial, the Government introduced evidence of the search and subsequent arrests. Warren, testifying in his own defense, claimed that he lived in Maryland and was present at the apartment only as a crack buyer and user. He asserted that, except for three rocks of crack that he purchased on the day of the search, all of the drugs and weapons found in the apartment belonged to others. Warren claimed that Smith leased the apartment, and that Gause was the Jamaican who sold drugs from the apartment, but that fear of Gause prevented him from identifying Gause to police at the time of the arrest. The Government impeached Warren with his own statement, made to the Pretrial Services Agency, that he lived at the apartment.

After Warren's testimony, the District Court judge granted his motion for judgment of acquittal on the charge of making available a place for storing and distributing drugs. Warren's counsel then sought to introduce three written statements by police officers. The first, part of the sworn statement of facts attached to the criminal complaint in this case, indicated that Smith leased the apartment. App. 4. The second and third were statements on the arrest forms for Gause and Smith indicating that both men sold drugs from the apartment and carried

---

**3.** The Government subsequently dismissed the charges against Smith.

guns. App. 57, 58. The judge excluded all of these statements as hearsay. Trial Tr. (Oct. 15, 1992) at 13, *reprinted in* Rec.Mat. § J. However, he said that even if the statements did not contain hearsay, they still were inadmissible because their prejudicial effect outweighed their probative value. *Id.*

On October 16, 1992, the jury convicted Warren on the remaining two counts of the indictment. On April 8, 1993, Warren was sentenced to consecutive prison terms of 121 months for possession of crack cocaine with intent to distribute and 60 months for use of a firearm during and in. relation to a drug trafficking crime, four years of supervised release, and a $100 special assessment.

## II. ANALYSIS

### A. The Search Warrant

■ Warren first challenges the District Court's denial of his suppression motion. Specifically, he contends that the magistrate who issued the search warrant in this case incorrectly found probable cause. A search by Government agents is presumptively unreasonable under the Fourth Amendment unless conducted pursuant to a warrant issued by a judicial officer upon a finding of probable cause. *See Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *see also United States v. Dawkins,* 17 F.3d 399, 403 (D.C.Cir.1994) ("All searches of the home, whether by warrant or pursuant to a recognized exception, must be supported by some form of probable cause."). The determination of probable cause calls for a "practical, commonsense" inquiry. . *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). A judicial officer who is considering an application for a search warrant must decide "whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.; accord United States v. Thomas,* 989 F.2d 1252, 1254 (D.C.Cir.1993) (per curiam). On review, the appellate court inquires only whether the magistrate had a "substantial basis for concluding that probable cause existed." *Gates,*

462 U.S. at 238–39, 103 S.Ct. at 2332 (internal quotations and alteration omitted).

■ Warren argues that no substantial basis for a finding of probable cause existed in this case. We disagree. Officer Holman's affidavit informed the magistrate that a confidential informant of proven reliability had stated that 76 Galveston Place, S.W., apartment number one, was being used for the storing and selling of crack cocaine, and that the informant's account had been corroborated by a controlled drug buy. Our cases consistently have recognized that police establish probable cause for a search where they corroborate a reliable informant's tip about drug activity at a residence by conducting a single controlled buy of illegal narcotics. *See United States v. Allen,* 960 F.2d 1055, 1057 (D.C.Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992); *United States v. Branch,* 545 F.2d 177, 179–80 (D.C.Cir.1976).

In analyzing the affidavit, we are mindful of the Supreme Court's admonition that the probable cause standard focuses on "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Gates,* 462 U.S. at 231, 103 S.Ct. at 2328 (internal quotations omitted). We believe that a reasonable and prudent person could find a substantial basis for crediting the informant's tip in this case, because of the informant's proven "track record" of reliability. "[O]ne of the ways in which reliability of a tip can be substantiated in one respect is by showing that the informant has proven credible in other instances." *United States v. Laws,* 808 F.2d 92, 100 (D.C.Cir.1986). Indeed, the Supreme Court has recognized that where "a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip." *Gates,* 462 U.S. at 233, 103 S.Ct. at 2329–30. Here, Officer Holman's affidavit noted that information provided by the informant had led to the seizure of large amounts of cocaine, about eight guns, and about 52 defendants. Further, the affidavit

noted, "[t]he source has never been proven unreliable." App. 6. Given this extensive documentation of the confidential informant's reliability, we find no error in the magistrate's reliance on the informant's tip.

Nor do we perceive any error in the magistrate's reliance on the controlled drug buy. While Warren places great emphasis on Officer Holman's failure to observe the informant entering the suspect apartment, "[i]t is not necessarily crucial to a finding of probable cause that a police officer observe an informant enter the specific apartment where a controlled buy is being conducted." *United States v. Richardson,* 861 F.2d 291, 294 (D.C.Cir.1988), *cert. denied,* 489 U.S. 1058, 109 S.Ct. 1325, 103 L.Ed.2d 593 (1989). Indeed, in *Richardson,* we suggested that a drug buy in an apartment building, though unobserved by police, demonstrates probable cause to search an apartment in that building when joined with a reliable informant's tip that drug activity is occurring in that apartment. *Id.* (citing *Jones v. United States,* 336 A.2d 535, 537 (D.C.), *cert. denied,* 423 U.S. 997, 96 S.Ct. 427, 46 L.Ed.2d 372 (1975)). What we suggested in *Richardson,* we now make clear. While we might conclude otherwise if the police had received only an anonymous tip, or a tip from an informant of questionable reliability, here we hold that a reliable informant's tip, in conjunction with a controlled drug buy in the suspect apartment—albeit unobserved—provided the magistrate with a substantial basis for his finding of probable cause.

 Our conclusion is unaltered by the fact that both the warrant and Officer Holman's affidavit identified the apartment as "# 1" when it actually was labeled as apartment B. App. 5, 7. Warren contends that the inclusion of this incorrect statement in the officer's affidavit vitiated the magistrate's finding of probable cause. However, an inaccurate statement in a warrant affidavit invalidates a warrant only if the statement was both "material to the issue of probable cause," and "made knowingly and intentionally, or with reckless disregard for the truth." *Richardson,* 861 F.2d at 293; *see also Franks v. Delaware,* 438 U.S. 154, 156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978).

Here, we need not reach the issue of the officer's mental state, for the misidentification of the apartment was immaterial to the probable cause determination. Even setting aside the incorrect description of the label on the apartment door, Officer Holman's affidavit established probable cause to search an apartment "located on the first floor, first apartment [to] the right upon entering the building." App. 5. The Fourth Amendment requires no more. *Franks,* 438 U.S. at 171–72, 98 S.Ct. at 2684–85 (stating that warrant is valid "if, when material that is the subject of the alleged falsity … is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause"); *see State v. Walters,* 230 Neb. 539, 432 N.W.2d 528, 534–35 (1988) (holding that affidavit describing apartment as "on the immediate left as you enter the foyer" was "sufficient to supply probable cause to issue the warrant, even when the incorrect apartment number is disregarded"); *State v. Taylor,* 82 Ohio App.3d 434, 612 N.E.2d 728, 733 n. 2 (1992) (holding that misstatement of house address in warrant affidavit was immaterial to probable cause determination where "the house was particularly described, including its location").

Finally, we reject Warren's contention that Officer Holman's affidavit fails to attribute the physical description of the apartment's location to the confidential informant. We reject Warren's hypertechnical reading of the affidavit. The Supreme Court has stated that

> affidavits for search warrants … must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area.

*United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). Reading Officer Holman's affidavit from a commonsense perspective, we note that its first page specifies that apartment number one is the first apartment to the right on the first floor. App. 5. Its second page then

recounts the informant's tip with regard to a premises referred to simply as "# 76 Galveston Pl., S.W. apartment # 1." App. 6. It requires little imagination to perceive the abbreviated description on page two as merely a shorthand reference to the more elaborate description on page one, and, thus, to read the affidavit as attributing the description of the apartment's location to the informant. Though the affidavit could have been written more clearly, we do not find it sufficiently opaque to cast doubt upon our conclusion that the officers in this case acted under the authority of a valid warrant when they searched the apartment where Warren was arrested. We therefore affirm the District Court's denial of Warren's suppression motion.[4]

### B. The Informant's Identity

■ Warren also challenges the District Court's denial of his motion to discover the identity of the Government's confidential informant. To obtain the informant's identity, Warren was required to overcome "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States,* 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957). This privilege is "by no means absolute." *United States v. Brodie,* 871 F.2d 125, 128 (D.C.Cir. 1989). Instead, the determination whether to disclose the identity of a confidential police informant requires the District Court to balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro,* 353 U.S. at 62, 77 S.Ct. at 629. However, we have long adhered to the rule "that *Roviaro* does not require disclosure of an informant who was not an actual participant in or a witness to the offense charged." *United States v. Skeens,* 449 F.2d 1066, 1071 (D.C.Cir.1971); *cf. Brodie,* 871 F.2d at 128 (stating that defendant's claim for discovery of informant's identity was strong where informant was sole witness to drug sale

charged in indictment). Accordingly, defendants face "a heavy burden ... to establish that the identity of an informant is necessary to [the] defense." *Skeens,* 449 F.2d at 1070. Speculation as to the information the informant may provide is insufficient. *United States v. Derr,* 990 F.2d 1330, 1339–40 n. 10 (D.C.Cir.1993) (citing *Skeens,* 449 F.2d at 1070). We review the District Court's application of the *Roviaro* standard only for an abuse of discretion. *Brodie,* 871 F.2d at 128.

■ We find that the District Court properly exercised its discretion in this case because Warren's need for the informant's identity failed to outweigh the Government's interest in preserving a reliable confidential informant. First, as was the case in *Skeens,* here "nothing in this record establishes that the informant was a participant, an eyewitness, or a person who was otherwise in a position to give direct testimony concerning the crime." 449 F.2d at 1070. All of the criminal offenses for which Warren was charged arose from the September 12, 1989, search of the apartment where he was arrested. The informant was not present during that search. Instead, as in other cases where we have affirmed decisions to withhold a confidential informant's identity, the informant's role was limited to providing the information that justified issuance of the search warrant. *See United States v. Whitmore,* 480 F.2d 1154, 1155 (D.C.Cir.1973) (affirming refusal to require informant's appearance where "informant merely furnished information which was the basis for a search warrant"); *United States v. James,* 466 F.2d 475, 477 (D.C.Cir.1972) (same).

Even though the informant was not a witness to the charged offenses, we recognize that the informant's testimony might have been helpful to Warren. The informant was, after all, the sole known witness to the controlled drug buy at the apartment. However, we believe the District Court properly assessed the significance of the informant's potential testimony. Warren can only speculate that the informant would have testified

---

4. Because we find the search warrant valid, we need not consider the District Court's alternative holding that, even if the circumstances in this case did not give rise to probable cause, the

search was lawful under *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), because the officers relied on the warrant in good faith.

that Warren played no role in the controlled drug buy, but speculation cannot overcome the Government's strong interest in preserving the confidentiality of this informant. *See Derr*, 990 F.2d at 1339–40 n. 10. As we have noted, the informant had a long record of usefulness in assisting the police in ferreting out illegal drug activity, and always had proven reliable. Further, the District Court's denial of Warren's effort to discover the informant's identity did not disable Warren from presenting the defense he desired. Warren wished to argue that other occupants of the apartment on the day of the arrest were the resident drug sellers. Support for that defense was available in the form of evidence that one resident, Jocelyn Gause, reportedly engaged in a drug transaction shortly before the search, and that another, Edward Smith, kept personal papers in the apartment where the drugs were located.[5] In light of these considerations, we find no error in the District Court's denial of Warren's motion to discover the informant's identity.

## C. Exclusion of the Officers' Statements

Warren next argues that the District Court erred at trial in excluding the police officers' statements. The District Court excluded each of the following: (1) Officer Holman's statement that Smith leased the apartment, contained in a statement of facts attached to the criminal complaint against Warren, App. 4, (2) Lieutenant Berberich's statement that Smith "sells 'crack' from residence, carries a pistol," contained in a Park Police arrest report for Smith, App. 57, and (3) Lieutenant Berberich's statement that Gause "sells 'crack' from location of arrest, may be armed, carries a pistol," contained in a Park Police arrest report for Gause, App. 58.

We agree with Warren's argument regarding Officer Holman's statement. This statement plainly was relevant, and therefore admissible under the Federal Rules of Evidence. Evidence is relevant if it has a tendency to make the existence of a material fact "more probable or less probable than it would be without the evidence." FED. R.EVID. 401. Here, evidence that Smith leased the apartment made it less likely that Warren owned the drugs found there, albeit marginally so. However, the District Court excluded this statement as hearsay—an out-of-court statement "offered in evidence to prove the truth of the matter asserted." FED.R.EVID. 801(c). This was error. Officer Holman's statement that Smith leased the apartment was contained in a sworn statement of facts submitted to a federal magistrate. Where, as here, "the government has indicated in a sworn affidavit to a judicial officer that it believes particular statements are trustworthy, it may not sustain an objection to the subsequent introduction of those statements on grounds that they are hearsay." *United States v. Morgan*, 581 F.2d 933, 938 (D.C.Cir.1978). Instead, Officer Holman's statement was admissible under Federal Rule of Evidence 801(d)(2)(B) as a non-hearsay statement offered against the Government "of which the [Government] has manifested an adoption or belief in its truth." FED.R.EVID. 801(d)(2)(B); *see Morgan*, 581 F.2d at 937–38; *United States v. Kattar*, 840 F.2d 118, 131 (1st Cir.1988) (finding statements admissible under Rule 801(d)(2)(B) where Justice Department manifested belief in their truthfulness by submitting them to federal courts). While we review the District Court's evidentiary rulings only for abuse of discretion, *United States v. Clarke*, 24 F.3d 257, 267 (D.C.Cir.1994), we find such an abuse here.

We are no more persuaded by the District Court's alternative conclusion that Officer Holman's statement was inadmissible under Federal Rule of Evidence 403. Under that rule, otherwise admissible evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice"—unfair prejudice meaning "an undue tendency to suggest decision on an improper basis." FED.R.EVID. 403 & advisory committee's note. Here, neither the District Court below nor the Government at oral argument identified any potential prejudice from Offi-

---

5. Indeed, Warren's counsel herself noted the existence of these helpful facts at a hearing held before the District Court to consider Warren's discovery motion. Tr. of Hearing (July 6, 1992) at 32–33, *reprinted in* Rec.Mat. § F.

cer Holman's sworn statement, nor could they. We cannot fathom how the bare statement that Smith leased the apartment could prejudice the Government in any way. The District Court has great latitude under Rule 403. *See Clarke*, 24 F.3d at 265 ("We review the district court's Rule 403 determinations with great deference, reversing only for grave abuse of discretion.") (internal quotations omitted). However, its latitude is not so great as to permit exclusion of evidence under that rule where prejudice is altogether absent. Accordingly, we hold that the District Court erred in excluding Officer Holman's statement.

Despite our finding of error, however, we need not reverse because we can conclude with "fair assurance ... that the judgment was not substantially swayed by the error." *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946); *see* FED.R.CRIM.P. 52(a) ("Any error ... which does not affect substantial rights shall be disregarded."). Here, evidence that Smith leased the apartment was cumulative of other evidence heard by the jury. Warren testified that the apartment belonged to Smith, and police officers testified that Smith admitted to living there and that Smith's personal papers were stored there. Also, the Government presented evidence that Warren on two occasions admitted to living in the apartment, once to Officer Fennimore and once to the Pretrial Services Agency. Thus, evidence that Warren did not *lease* the apartment was only marginally significant. Finally, the evidence of Warren's guilt was strong. Police found his clothing and personal papers scattered about a room where drugs were strewn and a weapon was hidden. They found a large amount of cash in the room and in his clothing. We therefore hold that the error was harmless.

■■■ As to Lieutenant Berberich's statements that Gause and Smith sold drugs from the apartment and carried pistols, these too were relevant to the issue of ownership of the drugs. However, we agree with the District Court that these statements contained hearsay. Unlike Officer Holman's statement, statements made by police officers on arrest reports are not sworn before a judicial officer. Thus, the Government cannot be said to have manifested a belief in their truth so as to bring the statements within the non-hearsay classification of Rule 801(d)(2)(B). Warren, however, asserts that the statements fall within either of two exceptions to the hearsay rule. First, he argues, the statements are admissible as business records under Federal Rule of Evidence 803(6). We reject this argument. Rule 803(6) excepts from the general bar on hearsay evidence all records of

> acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the ... record ... unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

FED.R.EVID. 803(6). Police reports are admissible as business records under this rule "when offered by a criminal defendant to support his defense." *United States v. Smith*, 521 F.2d 957, 965 (D.C.Cir.1975) (emphasis omitted).[6] However, the rule allows admission of statements in such reports only if they reflect the maker's personal knowledge, or if they were "reported to the maker, directly or through others, by one who is himself acting in the regular course of business, and who has personal knowledge." *Id.* at 964; *see* 4 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S EVIDENCE ¶ 803(6)[04] (1994) ("Each participant in the chain producing the record—from the initial observer-reporter to the final entrant—must be acting in the course of the regularly conducted business."). Here, nothing indicates that Lieutenant Berberich's statements either reflected his personal knowledge or contained information provided to him by someone with personal knowledge acting in the

---

**6.** In *Smith*, we interpreted the exception to the hearsay rule created by the Business Records Act, 28 U.S.C. § 1732(a) (1970), which was superseded by Rule 803(6) in 1975, *see* Pub.L. No. 93–595, § 2(b), 88 Stat. 1926, 1949 (1975). However, we noted in *Smith* that "[t]he same result would be reached under the Federal Rules of Evidence." 521 F.2d at 968 n. 24.

regular course of business. Because no foundation for admission of the statements appears in the record, we cannot conclude that the District Court abused its discretion in refusing to admit them under Rule 803(6).[7]

■ Warren also argues, for the first time on appeal, that the District Court should have admitted the statements about Gause and Smith as public records under Federal Rule of Evidence 803(8), which creates an exception to the hearsay rule for records "setting forth ... against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." FED.R.EVID. 803(8)(C). Because Warren failed to raise this argument below, we review the District Court's decision only for plain error. FED.R.CRIM.P. 52(b). Under that standard, we must determine "(1) whether there is unwaived legal error, (2) whether the error is 'plain' or 'obvious' under current law and (3) whether the error was prejudicial." *United States v. Merlos*, 8 F.3d 48, 50 (D.C.Cir.1993) (citing *United States v. Olano*, —— U.S. ——, —— – ——, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993)), *cert. denied*, —— U.S. ——, 114 S.Ct. 1635, 128 L.Ed.2d 358 (1994). The scope of our review is narrow, covering "only such error that 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* at 50 (quoting *Olano*, —— U.S. at ——, 113 S.Ct. at 1779 (internal quotations omitted)).

■ We find no such error here. As to the first element of the plain error standard, we recognize that an argument may be made that the District Court committed legal error in failing to admit the statements under Rule

803(8)(C). In *Smith*, we stated in dicta that Rule 803(8)(C)'s "reference to 'factual findings' may authorize the admission of [an] investigator's conclusions based on the information he derived from first-hand observers." 521 F.2d at 968 n. 24. Thus, Rule 803(8)(C) appears to provide for admission of police officers' statements in public records even in the absence of a demonstration that the statements reflected the officers' personal knowledge.[8] *See* 4 WEINSTEIN & BERGER, *supra*, at ¶ 803(8)[03] ("[E]ven if the official does not have first-hand knowledge and the information he acquires does not satisfy some other hearsay exception, admissibility may still be warranted [under Rule 803(8)(C)]."); 2 MCCORMICK ON EVIDENCE 291 n. 14 (John W. Strong ed., 4th ed. 1992) ("Lack of first-hand knowledge does not necessarily require exclusion [under Rule 803(8)]."); *but see* FED.R.EVID. 803 advisory committee's note ("[N]either this rule nor Rule 804 dispenses with the requirement of firsthand knowledge.").

However, we need not decide whether the District Court erred in failing to admit the statements under Rule 803(8), for "the Court of Appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law." *Olano*, —— U.S. at ——, 113 S.Ct. at 1777. Here, even if the District Court did err, its error was not clear. It bears emphasis that the suggestion in *Smith* that police reports containing hearsay statements may be admitted under Rule 803(8) came in dicta. Neither this circuit nor the Supreme Court ever has *held* that such statements may be admitted under that rule. While we recognized in *Merlos* that "a prior judicial opinion" is not an absolute prerequisite to a finding of plain error, the admissibility of these statements under Rule 803(8)(C)

---

7. We recognize that the officers' statements could be admissible under Rule 803(6) if hearsay recorded by the police fell within a separate hearsay exception, such as those allowing for admission of dying declarations or excited utterances. *See Smith*, 521 F.2d at 964–65; 4 WEINSTEIN & BERGER, *supra*, at ¶ 803(6)[04]. However, Warren has not argued that the statements were admissible on such bases.

8. We note, however, that such statements still could be excluded under the rule if "the sources

of information or other circumstances indicate lack of trustworthiness." FED.R.EVID. 803(8); *see Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167, 109 S.Ct. 439, 448, 102 L.Ed.2d 445 (1988) ("[A] trial judge has the discretion, and indeed the obligation, to exclude an entire report or portions thereof ... that she determines to be untrustworthy."); *accord In re Korean Air Lines Disaster of September 1, 1983*, 932 F.2d 1475, 1482 (D.C.Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991).

is not such a "clear legal norm" as to make citation of controlling precedent unnecessary. 8 F.3d at 51. In the absence of any relevant holding that the officers' statements are admissible under Rule 803(8)(C), we find no plain error. *See Merlos,* 8 F.3d at 51 (stating that error in reasonable doubt instruction was not obvious where neither court of appeals nor Supreme Court had held instruction invalid).

### D. Calculation of Warren's Sentence

In his final challenge to the proceedings below, Warren contends that the District Court erred in calculating his sentence for possession of crack cocaine with intent to distribute. Specifically, he claims the District Court should not have considered the amount of drugs he possessed for personal use in calculating his base offense level under the federal Sentencing Guidelines. Warren contends that he intended to use—not to distribute—the 2.47 grams of crack cocaine found in a cigarette package in the room where he was arrested. In determining Warren's sentence, the District Court included this amount with the other 33.65 grams of crack cocaine found in the room. The total, 36.12 grams, corresponded to a base offense level of 30 under the Guidelines. *See* U.S.S.G. § 2D1.1(7) (1993). After adding two points to this base offense level for obstruction of justice,[9] the District Court sentenced Warren to 121 months in prison for the crime, the minimum possible term under the Guidelines for Warren's offense level. *See* U.S.S.G. ch. 5, pt. A (Sentencing Table). By contrast, if the court had excluded the crack cocaine found in the cigarette package from its calculations, Warren's minimum possible prison term under the Guidelines would have been 97 months. *Id.*

Warren rests his argument on two recent decisions of the Ninth Circuit holding that a "sentence for the crime of possession with intent to distribute should be based only on the amount intended for distribution." *United States v. Rodriguez–Sanchez,* 23 F.3d 1488, 1496 (9th Cir.1994); *accord United States v. Kipp,* 10 F.3d 1463, 1466 (9th Cir. 1993). Accordingly, the Ninth Circuit re-

quires that, "in calculating the base offense level for possession with intent to distribute, the district court must make a factual finding as to the quantity of drugs possessed for distribution and cannot include any amount possessed strictly for personal use." *Kipp,* 10 F.3d at 1466.

■ We agree with Warren that the Ninth Circuit's approach may merit consideration in an appropriate case, but not here. In this case, Warren argued that the District Court should calculate his sentence for possession of crack cocaine with intent to distribute "based on the amount of 2.47 grams, which was in the Newport [cigarette] pack that Mr. Warren admitted was his package." Sentencing Tr. (Apr. 8, 1993) at 4, *reprinted in* Rec.Mat. § L. Warren never claimed during sentencing that the 2.47 grams of crack cocaine found in the cigarette pack were strictly for personal use—rather, he conceded just the opposite and argued only that the remaining 33.65 grams should not be attributed to him. Warren may not argue to the sentencing judge that his sentence should be based on the amount of crack cocaine found in the cigarette package, and then argue on appeal that the District Court erred by calculating his sentence based on these same drugs. This is not a case in which the District Court sentenced on the basis of inappropriate considerations. Based on the evidence offered at trial and Warren's arguments at sentencing, the trial judge could properly find that Warren possessed 36.12 grams of crack cocaine with intent to distribute. Thus, we affirm the District Court's calculation of Warren's sentence.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of conviction.

*So ordered.*

---

9. This adjustment arose from Warren's failure to appear for his arraignment on October 20, 1989.