**UNITED STATES of America**

v.

**Roger RAMIREZ, et al. Defendants.**

**No. CR 99–0043(PLF).**

United States District Court,
District of Columbia.

June 17, 1999.

Thomas Earl Patton, III, Tighe, Patton, Tabackman, Babbin, LLC, Washington, DC, Edward Brian Mac Mahon, Jr., Middleburg, VA, for plaintiff.

Joe Robert Caldwell, Jr., Bardford Mann Berry, Miller, Cassidy, Larroca, Lewin, L.L.P., Washington, DC, for defendant.

## OPINION

PAUL L. FRIEDMAN, District Judge.

This matter came before the Court for a hearing on approximately twenty motions filed by four of the seven defendants originally charged in this case. Prior to the hearing on the motions, defendants Roger Ramirez and Jose Ismael Medina–Torres entered guilty pleas, and the motions they had filed therefore became moot and were not argued. Defendant Pedro Agramonte, who had been a fugitive since the filing of the indictment, was only recently brought to the District of Columbia and arraigned. The Court therefore has given his attorney additional time to file motions. The Court heard testimony and argument on the motions filed by defendants Miguel Romero, Jose Diplan, Jose Marquez and Antonio DeJesus Alberto for three full days on May 24, 25 and 26, 1999.[1]

## I. BACKGROUND

On March 2, 1999, a grand jury returned a thirteen-count indictment against seven individuals charging all of them with one count of conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 846, and containing several substantive counts of heroin distribution, possession with intent to distribute heroin and aiding and abetting in violation of various provisions of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* After defendants Ramirez and Medina–Torres entered guilty pleas, only five counts remained viable. In Count I, defendants Romero, Diplan, Marquez, Agramonte and Alberto all stood charged with conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin. In Count X, defendants Romero, Diplan, Marquez and Agramonte were charged with possession with intent to distribute 100 grams or more of heroin and aiding and abetting on February 4, 1999. Count XI related to the same alleged incident but also alleged that it took place within 1,000 feet of a school. *See* 21 U.S.C. § 860(a). In Count XII, defendant Alberto alone was charged with unlawful possession with intent to distribute heroin on February 9, 1999. Count XIII related to the same alleged event but also alleged that it occurred within 1,000 feet of a school.

On June 1, 1999, following the hearing on these motions, a grand jury returned a nine-count superseding indictment against defendants Romero, Diplan, Marquez, Agramonte and Alberto.[2] Count I charges

---

1. The Court previously had heard some testimony with respect to defendant Antonio DeJesus Alberto's motion to suppress statements on March 31 and April 14, 1999.

2. The government had advised both the Court and counsel for defendants that such a superseding indictment was likely, but counsel agreed that it would make sense to go for-

all five defendants with a conspiracy to distribute and possess with intent to distribute narcotics, beginning in the spring of 1998 and concluding on or about February 9, 1999. This conspiracy charge involves not only heroin but also cocaine and cocaine base or crack cocaine. Count II charges defendant Alberto with distribution of cocaine base on November 30, 1998. Counts III and IV charges defendant Agramonte with distribution of cocaine base and aiding and abetting on December 7, 1998, the latter count adding the allegation that the alleged conduct occurred within 1,000 feet of a school. Counts V and VI are identical to Counts X and XI of the earlier indictment and include allegations against all defendants except Alberto. Counts VII and VIII are identical to Counts XII and XIII of the earlier indictment and relate only to defendant Alberto and his alleged conduct on February 9, 1999. Count IX charges defendant Agramonte with witness tampering in violation of 18 U.S.C. § 1512(b).

The Court heard evidence on several motions to suppress evidence: (1) defendant Alberto's motion to suppress physical evidence seized pursuant to a search warrant from 4104 14th Street, N.W., Apt. 3, and his motion to suppress physical evidence seized from a blue Honda he was driving on February 9, 1999; (2) defendant Marquez's motion to suppress statements allegedly made by him to the DEA; and (3) defendant Romero's motion to suppress a post-arrest statement allegedly made by him to the DEA. After hearing argument, the Court denied defendant Alberto's two motions and defendant Marquez's motion, announcing its findings and conclusions from the Bench. At the request of counsel for defendant Romero, the Court postponed argument and decision on defendant Romero's motion until after it receives a report with respect to Mr. Romero's competency to stand trial, that issue having arisen during the course of the hearing.

The Court postponed argument on defendant Alberto's motion to suppress eyewitness identification testimony because it now appears that other defendants may file similar motions and the same witnesses will be relevant to all such motions. It also postponed argument on defendant Marquez's motion to suppress recorded conversations because additional recordings have only recently been provided and counsel requested an opportunity to review all tapes that might raise similar issues. Finally, defendant Alberto withdrew his motion to suppress statements (even though the Court had already heard substantial evidence with respect to the statements) after the government represented that it would not use any statements made by defendant Alberto in its case in chief. If the government seeks to introduce such statements in rebuttal, the Court then will decide the question of their voluntariness before permitting the government to offer them in the presence of the jury.[3]

The Court heard argument on the motions of defendants Romero and Diplan to review and remove Magistrate Judge Kay's order of pretrial detention and the motion of defendant Marquez to further modify his conditions of release, the Court having previously released him to the Intensive Supervision Program. The Court took these motions under advisement. It now has resolved the motions of defendants Diplan and Marquez in separate orders issued this same day. It has postponed decision on the motion of defendant Romero pending the results of his competency evaluation.

---

ward with argument on as many of the pending motions as possible.

3. The Court did indicate, however, that before trial it would hear from counsel for defendant Alberto with respect to the application to these statements of the District of Columbia Interpreter's Act, D.C.Code § 31–2702, at the same time it hears argument on this question in connection with defendant Romero's argument on his motion to suppress his post-arrest statement.

The Court also considered the issue of any apparent or potential conflict of interest on the part of counsel for defendant Marquez. After hearing from both defense counsel and counsel for the government, the Court addressed Mr. Marquez personally on these matters. For the reasons stated in court, the Court concluded both that there was no actual or apparent conflict of interest and that the potential for a conflict arising was remote. It also concluded that Mr. Marquez fully understood the potential problem and nevertheless wished to waive his right to conflict-free counsel and proceed with his present counsel.

The Court and counsel agreed that it would be appropriate to postpone argument on the following motions until after the grand jury returned the superseding indictment: (1) defendant Marquez's motion for severance; (2) the motions of defendants Alberto, Diplan, Marquez and Romero for a pretrial determination on the existence of a conspiracy and a pretrial ruling on the admissibility of co-conspirators' statements (the so-called "*James* hearing"); (3) the government's motion for leave to introduce other crimes evidence under Rule 404(b) of the Federal Rules of Evidence; and (4) any and all motions to be filed by defendant Agramonte. Those motions and all others are now scheduled for argument on August 17 and August 18, 1999. *See* Order of June 8, 1999.

Finally, the Court arraigned defendants on the superseding indictment on June 4, 1999. The Court did not hear any new argument on the pending motions. Counsel did make additional representations to the Court at that time regarding what discovery material had been provided to defendants.

The remaining matters before the Court on which it heard argument relate to defendants' requests for bills of particulars and discovery generally and the government's. *Brady* obligations. The Court turns now to those matters.

## II. BILLS OF PARTICULARS, DISCOVERY AND *BRADY*

### A. Motions For Bill Of Particulars

With respect to Count I, the conspiracy count, defendants Romero, Marquez and Alberto request a bill of particulars as to (1) the identities of all co-conspirators not named in the indictment; (2) the specific overt acts taken in furtherance of the alleged conspiracy and to whom each such act is attributed; (3) the time, place, date and participants for each meeting, conversation or agreement in which each defendant is alleged to have participated; (4) the specific date each defendant is said to have entered the conspiracy; (5) the amount of drugs attributable to each defendant; and (6) any and all specific evidence of each defendant's having acted in concert with others.[4] The Court finds that defendants are entitled to a bill of particulars as to some but not all of the items they have requested.

"Under [Rule 7(f) of] the Federal Rules of Criminal Procedure, it is within the sound discretion of the court to determine whether a bill of particulars should be provided," and the Court should grant such motions when "necessary to prevent unfair surprise at trial." *United States v. Espy*, 989 F.Supp. 17, 34 (D.D.C.1997); *see United States v. Butler*, 822 F.2d 1191, 1192–93 (D.C.Cir.1987). The Court must strike a "prudent balance" between the legitimate interests of the government and those of the defendants. *United States v. MacFarlane*, 759 F.Supp. 1163, 1169 (W.D.Pa.1991). A bill of particulars is not a discovery tool or a devise for allowing the defense to preview the government's theories or evidence. It properly includes clarification of the indictment, not the government's proof of its case. *United States v. Smith*, 341 F.Supp. 687, 690 (N.D.Ga. 1972).

---

4. Defendant Diplan has joined in these motions.

■ Unlike the general federal conspiracy statute, see 18 U.S.C. § 371, the conspiracy provision of the Controlled Substances Act does not require an indictment to list any overt acts taken in furtherance of the conspiracy. 21 U.S.C. § 846; see United States v. Dempsey, 806 F.2d 766, 769 (7th Cir.1986); United States v. Sweeney, 688 F.2d 1131, 1140 (7th Cir.1982). In fact, the Supreme Court recently held that proof of "the commission of any overt acts in furtherance of the conspiracy" is not even required for a conviction under 21 U.S.C. § 846. United States v. Shabani, 513 U.S. 10, 15, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994); see also United States v. Thomas, 114 F.3d 228, 262 (D.C.Cir.1997) ("neither common law nor the drug conspiracy statute require proof of any overt act by a conspirator in furtherance of the conspiracy"); United States v. Pumphrey, 831 F.2d 307, 309 (D.C.Cir.1987) ("Congress certainly must be presumed to have been aware of the general conspiracy statute when it enacted a new narcotics control scheme employing the conspiracy concept and left the overt act requirement out"). Thus, an indictment under 21 U.S.C. § 846 is sufficient if it alleges "a conspiracy to distribute drugs, the time during which the conspiracy was operative and the statute allegedly violated, even if it fails to allege any specific act in furtherance of the conspiracy." United States v. Sweeney, 688 F.2d at 1140.

■ While the government argues against a bill of particulars on the basis of these less stringent pleading requirements, this Court believes that the logic cuts the other way: A bill of particulars is all the more important in a narcotics conspiracy case because the indictment itself provides so little detail. Furthermore, while the conspiracy in this case is alleged to have begun in the spring of 1998 and to have lasted until on or about February 9, 1999, defendants Romero, Diplan and Marquez are not charged with any criminal conduct before February 4, 1999, only six days before the alleged conspiracy ended. With respect to defendants Diplan and Marquez at least, the government has stated that the two substantive counts, both relating to the same aborted sale of drugs on February 4, detail all the acts involving them and that there may be no additional evidence whatsoever, but for this activity on February 4, 1999. Indeed, the government says that it may not even have any evidence of when these defendants joined the conspiracy.

In these circumstances, the Court concludes that the defendants must be provided with certain information in order to permit them to prepare adequately for trial. Specifically, they are entitled to a bill of particulars setting forth the names of all persons the government would claim at trial were co-conspirators (whether or not they will be called as trial witnesses), the approximate dates and locations of any meetings or conversations not already identified in the indictment in which each defendant allegedly participated, and the approximate date on which each defendant allegedly joined the conspiracy. United States v. Taylor, 707 F.Supp. 696, 700 (S.D.N.Y.1989). See United States v. Trie, 21 F.Supp.2d 7, 22 (D.D.C.1998) (names of unindicted co-conspirators to be provided in bill of particulars); see also United States v. Resko, 3 F.3d 684, 696 (3rd Cir. 1993) (defendant may be held liable for acts by all co-conspirators even when he "did not know all of the details or goals of the conspiracy"). While the Court is not expressly requiring that the government provide the defendants with all overt acts taken by anyone in furtherance of the conspiracy, the government should understand that it is required to provide particulars as to all overt acts (or at least all meetings and conversations) in which any defendant participated so that each defendant may understand the government's view of his alleged role in the conspiracy. See United States v. Rogers, 617 F.Supp. 1024, 1029 (D.Col.1985) (overt acts in furtherance of conspiracy to be provided in bill of particulars); United States v. Hubbard, 474 F.Supp. 64, 81 (D.D.C.1979)

(same). Defendants' other requests for particulars with respect to the conspiracy count are denied.

Defendants also request particulars with respect to the non-conspiracy counts, charging various acts of distribution of narcotics, possession with intent to distribute and aiding and abetting. These are run-of-the-mill narcotics charges as to which the defendants are adequately informed by the indictment itself of the date of the conduct and the conduct alleged. The information set forth in the indictment, along with the extensive discovery provided to date, are sufficient for the preparation of a defense. They are entitled to no more. *See United States v. Taylor,* 707 F.Supp. at 700.

### B. Motions to Disclose Identities of Informants or Cooperating Witnesses

Defendants seek the names of all informants and the true identities of all cooperating witnesses. Defendants also seek the name of a person the government has identified as an "unwitting friend" who was introduced by a cooperator to the undercover police officer (Officer Rodea) who later engaged in the purchase of heroin from Roger Ramirez on October 21, 1998. For purposes of analysis, the Court will treat confidential informants, cooperating witnesses, other cooperating persons and the so-called "unwitting friend" identically.

The government says there are six such people. Two of them are former co-defendants Roger Ramirez and Jose Ismael Medina–Torres, both of whom will testify at trial. Another two are an unidentified third person who pleaded guilty in another case and who allegedly was involved in both the heroin and cocaine aspects of the conspiracy alleged here, and a cooperating witness who was involved in the distribution of crack cocaine alleged in the indictment, but not in the distribution of heroin. The government intends to call both of these individuals as witnesses at trial. Defendants already know the identities of Ramirez and Medina–Torres and have

been provided with a wealth of information about them. According to the government, defendants will learn the names of the other two witnesses at trial and are entitled to no earlier disclosure of the identities of these individuals unless he or she possesses exculpatory information disclosable under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

The final two people are the so-called "unwitting friend" and the cooperator who introduced the "unwitting friend" to Officer Rodea. The government proffered that on October 21, 1998, the cooperator introduced this unwitting friend to Rodea, then acting in an undercover capacity, who indicated he was interested in purchasing heroin. The unwitting friend then contacted his source (Roger Ramirez) and brought Ramirez to a vehicle in which Rodea was sitting with the cooperator. Rodea told both the unwitting friend and the cooperator to leave, after which Ramirez entered the vehicle and discussed the sale of heroin with Rodea. The actual sale took place some time later, at a different location. Neither the unwitting friend nor the cooperator observed or participated in the drug transaction, and the government does not intend to call either as a witness at trial. It therefore maintains that it need not disclose their identities.

■■ The Supreme Court has stated that, in determining whether to require the disclosure of confidential informants, the Court should balance "the probable interest in protecting the flow of information against the [defendant's] right to prepare his defense." *Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). "Where the disclosure of an informer's identity, or the contents of his communications, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the [informer's] privilege must give way." *Id.* at 60, 77 S.Ct. 623. The Court must consider the particular circumstances of each case, taking into con-

sideration "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62, 77 S.Ct. 623. The defendant always has the burden of establishing that knowing the identity of the informant in advance of trial is necessary to the preparation of a defense. *United States v. Mangum,* 100 F.3d 164, 172 (D.C.Cir.1996); *see United States v. Warren,* 42 F.3d 647, 654 (D.C.Cir.1994).

*Roviaro* generally does not require disclosure of an informant who was not an "actual participant or a witness to the offense charged." *United States v. Warren,* 42 F.3d at 654 (quoting *United States v. Skeens,* 449 F.2d 1066, 1071 (D.C.Cir. 1971)). In *Roviaro,* the informant was both the only other participant in the alleged drug transaction and the only material witness other than the defendant himself, and his identity therefore had to be disclosed. In *Warren,* by contrast, the informant provided the police with information which led to the execution of a search warrant of the defendant's apartment, but he was not present during the search. *United States v. Warren,* 42 F.3d at 654. The *Warren* court did not require the disclosure of the witness' identity. *Id.* at 655.

■ In this case, defendants are already aware of the fact that Messrs. Ramirez and Medina–Torres will testify at trial. The other two cooperating witnesses also will testify at trial, and defendants are entitled to learn their identities under *Roviaro* sufficiently in advance of trial to make use of the information in the preparation of a defense. Under *Roviaro* and *Warren,* however, defendants are not entitled to the identity of the "unwitting friend" or the cooperator who will not testify at trial. While one provided an introduction and the other helped set up a meeting, neither was a witness to or a participant in the October 21 drug transaction itself, and defendants have not borne their "heavy burden" of showing how knowing their identities or having their prior testimony, if any, would aid their defense; their speculative arguments as to the information these individuals might provide is insufficient. *United States v. Warren,* 42 F.3d at 654.[5]

## C. Motions To Compel Disclosure Of Brady Information and Other Discovery Requests

■ Under the standard articulated by the Supreme Court in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the government must disclose any evidence in its possession that is favorable to the accused and material either to a defendant's guilt or punishment. The government also must do so in sufficient time for the defendant to "use the favorable material effectively in the preparation and presentation of its case." *United States v. Pollack,* 534 F.2d 964, 973 (D.C.Cir.1976). As an initial matter, it is important to set out several basic propositions of *Brady* jurisprudence.

■ First, "favorable evidence" for purposes of *Brady* encompasses both evidence that is exculpatory and evidence that could be used to impeach a government witness. *United States v. Bagley,* 473 U.S. 667, 676–77, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Second, the existence of a duty to disclose witness statements at trial pursuant to the Jencks Act, 18 U.S.C. § 3500, does not eviscerate the government's *Brady* obligation to disclose witness statements well in advance of trial if those statements also fall under *Brady.* See *United States v. Tarantino,* 846 F.2d 1384, 1414 n. 11 (D.C.Cir.1988). Third, as the government acknowledged at oral argument, *Brady* trumps Rule 6(e) of the Federal Rules of Criminal Procedure, and the government must disclose *Brady* information in a timely manner even if it also is

---

5. Defendant Marquez's argument about needing this information to develop any entrapment defense is precisely the argument rejected by the court in *Warren* as speculative, particularly as respecting Marquez who had nothing to do with the October 21 meeting.

grand jury material. Finally, it is important to note that courts in this jurisdiction look with disfavor on narrow readings of the government's *Brady* obligations; it simply is insufficient for the government to offer "niggling excuses" for its failure to provide potentially exculpatory evidence to the defendant. *See United States v. Paxson,* 861 F.2d 730, 737 (D.C.Cir.1988).

■■■■■ At the same time, however, the government is not required to "deliver [its] entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *United States v. Bagley,* 473 U.S. at 675, 105 S.Ct. 3375. Moreover, it is the government's responsibility in the first instance to determine whether information in its possession is *Brady* material. While it generally is not the court's role to "referee ... disagreements about materiality and supervise the exchange of information," the government acts at its own risk when it withholds even arguably favorable evidence. *See United States v.. McVeigh,* 954 F.Supp. 1441, 1451 (D.Colo.1997). The government must bear in mind that it has the "affirmative duty to resolve doubtful questions in favor of disclosure," and that "if the sword of Damocles is hanging over the head of one of the two parties, it is hanging over the head of the [government]." *United States v. Blackley,* 986 F.Supp. 600, 607 (D.D.C. 1997) (internal quotations omitted). More fundamentally, the government must remember that "the prosecutor's role transcends that of an adversary: he [or she] 'is the representative not of an ordinary party to a controversy, but of a sovereignty ... whose interest ... in a criminal prosecution is not that it shall win a case, but that justice shall be done.'" *United States v. Bagley,* 473 U.S. at 675 n. 6, 105 S.Ct. 3375 (quoting *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)).

Certain matters were clarified during the motions hearing in late May and at the arraignment on June 4, 1999: The government has already provided defendants with copies of all undercover and other law enforcement reports. To the extent that anyone has affirmatively said that a particular defendant was *not* a member of the conspiracy, that information must be provided under *Brady* even if the statement was made to the grand jury. The government also has represented that it already has provided to defense counsel "ninety-five percent" of the Jencks material and that it has provided documents reflecting promises of immunity, leniency or preferential treatment, including any written plea agreements and transcripts of plea proceedings, for some witnesses who will testify at trial.

Information regarding complaints, disciplinary actions and the like that may exist with respect to any law enforcement officers will be obtained by the government under established procedures and promptly provided. There are no evidence technician reports. Tapes of recorded conversations have been provided. Any *Brady* information found in presentence investigation reports will be provided. Any information that a witness at a line-up, show-up or photographic identification *failed* to identify a defendant is *Brady* information and must be provided.

■■■■ Defendants have moved for the pretrial disclosure of the existence and substance of all promises of immunity, leniency or preferential treatment and the names and addresses of all such persons to whom such promises have been made, whether or not they will be witnesses at trial; the disclosure of presentence reports and witness protection program psychiatric reports and polygraph test results from government witnesses who will testify at trial; and the production of statements of co-conspirators whom the government does not intend to call as witnesses at trial. As for these requests, defendants are entitled to the disclosure of (1) the existence and substance of all promises of immunity, leniency or preferential treatment, including any written plea agreements and transcripts of plea proceedings for witnesses

who will testify at trial; (2) relevant portions of presentence investigation reports (at least the statements of the defendants and other trial witnesses under the Jencks Act and any *Brady* information for trial witnesses); and (3) witness protection psychiatric reports and polygraph test results of persons whom the government intends to call as witnesses at trial because such information may contain information that shows bias or motive or otherwise affects the credibility of the witness.[6]

■■■■■ Defendants are not entitled to such information with respect to witnesses whom the government does not intend to call at trial unless it is exculpatory evidence under *Brady*. Nor are they entitled to the statements of co-conspirators whom the government does not intend to call as witnesses at trial except for the statements of their co-defendants and any other statements of co-conspirators that the government intends to seek to introduce under Rule 801(d)(2)(E) of the Federal Rules of Evidence. *See United States v. Tarantino*, 846 F.2d at 1418 (the courts are "without authority" to order the production of the statement of a co-conspirator who is not a witness).

The one remaining matter is defendant Alberto's request for the identity of the person who said that Apartment 3 at 4104 14th Street, N.W. was "Henry's apartment." The identity of that person and the relevant portions of his statements must be disclosed under *Brady*, and the government represented at the June 4, 1999 arraignment that it would provide it promptly. To the extent defendants believe that any of their outstanding requests have not been dealt with or will not be satisfied by the government under the dictates of this Opinion, they may bring them to the Court's attention.

An Order consistent with this Opinion is entered this same day.

SO ORDERED.

## ORDER

For the reasons stated in open court and in the Opinion entered this same day, it is hereby

ORDERED that defendant Alberto's motion to suppress physical evidence seized pursuant to a search warrant from 4104 14th Street, N.W., Apt. 3 is DENIED; it is

FURTHER ORDERED that defendant Alberto's motion to suppress physical evidence seized from a blue Honda he was driving on February 9, 1999 is DENIED; it is

FURTHER ORDERED that defendant Marquez's motion to suppress statements allegedly made by him to the DEA is DENIED; it is

FURTHER ORDERED that the motions of defendants Alberto, Romero and Marquez for a bill of particulars are GRANTED in part and DENIED in part; it is

FURTHER ORDERED that defendant Alberto's motion to disclose informant and defendant Marquez's motion for the true identity of cooperating witness are GRANTED in part and DENIED in part; it is

FURTHER ORDERED that defendant Alberto's motion to compel discovery and defendant Marquez's amended request for *Kyles* and *Brady* information are GRANTED in part and DENIED in part; it is

FURTHER ORDERED that the motions of defendants Diplan and Marquez for pretrial disclosure of the existence and substance of promises of immunity, lenien-

---

6. Because the disclosure of some of this material necessarily would reveal the identities of the government's cooperating witnesses, information that is protected under *Roviaro* until closer to the trial date, the Court instructs the parties to seek agreement on a reasonable schedule for disclosure that will accommodate both the government's concerns and the defendants' need to prepare a defense.

cy or preferential treatment are GRANTED in part and DENIED in part; it is

FURTHER ORDERED that defendant Alberto's motion to compel disclosure of all presentence reports, witness protection program psychiatric reports and witness protection program polygraph test results is GRANTED in part and DENIED in part; it is

FURTHER ORDERED that defendant Alberto's motion for production of co-conspirators' statements whom the government does not intend to call as witnesses is DENIED except to the extent that the government intends to seek to introduce such statements under Rule 801(d)(2)(E) of the Federal Rules of Evidence or to the extent that the statements constitute *Brady* material; and it is

FURTHER ORDERED that the government's disclosures to defendants pursuant to the Opinion entered this same day shall be made on the following schedule:

1. The government shall provide defendants with a bill of particulars on or before June 30, 1999.

2. Except for information tending to reveal the identity of its confidential witnesses, the government shall provide defendants with all material required to be disclosed under *Brady v. Maryland* on or before June 30, 1999. The government also has an ongoing obligation to disclose any new information it discovers that is favorable to the defendants.

3. The parties shall seek agreement on a schedule for the early release of Jencks material, any other discovery mandated by this Opinion and the identities of the government's cooperating witnesses and other matters required to be disclosed with respect to them in order to accommodate the trial preparation needs and translation concerns of defendants. If the parties cannot agree on a reasonable schedule pursuant to this guidance by June 30,

1999, the Court will enter an Order setting a disclosure schedule.

SO ORDERED.