UNITED STATES of America

v.

Ronald Henderson BLACKLEY,
Defendant.

No. CRIM. 97–0166(RCL).

United States District Court,
District of Columbia.

Nov. 10, 1997.

Donald C. Smaltz, William F. Fahey, Joseph P. Guichet, Office of the Independent Counsel, Alexandria, VA, for Plaintiff.

Sheldon Krantz, Elizabeth R. Dewey, Piper & Marbury, L.L.P., Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on defendant's motion to compel production of *Brady* material. Based upon the written memoranda of the parties, oral arguments, and the relevant case law, defendant's motion is denied.

### A. The *Brady* Obligation

■ Under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the government is required to disclose all evidence that is favorable to defendant and "material either to guilt or to punishment." *Id.* at 87, 83 S.Ct. at 1196. The materiality of evidence depends on its importance to the case: "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).

■ Particularly relevant to the instant Motion to Compel is the Supreme Court's abandonment of the distinction between "specific request" and "general- or norequest" situations in *Bagley. See id.* at 678–82, 105 S.Ct. at 3381–84. Regardless of whether or not the information is requested by the defense, suppression by the government of favorable material evidence is constitutional error, "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *See Kyles v. Whitley*, 514 U.S. 419, 430–32, 115 S.Ct. 1555, 1564, 131 L.Ed.2d 490 (1995) (quotinq *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383). Therefore, the government's responsibility to produce *Brady* materials is neither heightened nor relaxed by the presence or absence of a written *Brady* request or a motion to compel. The government has an ongoing burden to provide material exculpatory evidence whenever it discovers that it has such information in its possession. Finally, the due process concerns underlying *Brady* are present "irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196.

### B. Defendant's Specific *Brady* Requests

1. Copies of the Department of Agriculture Inspector General (USDA–IG) and the Agency for International Development Inspector General (U.S. AID–IG) Reports

■ The first category of documents sought by the defense are the USDA–IG and U.S. AID–IG reports on their respective investigations of Ronald Henderson Blackley. Defense counsel contends that information contained in these reports will demonstrate that the Office of Independent Counsel's

("OIC") prosecutorial action against him was improper. In addition, he argues that the reports contain information relevant to the impeachment of government witnesses, *Giglio v. United States,* 405 U.S. 150, 154–55, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *United States v. White,* 116 F.3d 903, 918 (D.C.Cir. 1997) and prior inconsistent statements by government witnesses who will likely testify at trial. *See United States v. Cuffie,* 80 F.3d 514, 517 (D.C.Cir.1996) (quoting *United States v. Smith,* 77 F.3d 511, 515 (D.C.Cir. 1996)) (Evidence is material if "the undisclosed information could have substantially affected the efforts of defense counsel to impeach the witness, thereby calling into question the fairness of the ultimate verdict.") Defendant claims that the OIC's failure to produce these reports will seriously undermine confidence in the outcome of the trial.

Defendant's belief that these reports may be exculpatory is based on more than mere speculation. Defense counsel claim in both in their supplemental memorandum and at oral argument that Larry Byrne, a former high level administrator at U.S. AID, had the opportunity to review the U.S. AID report for the purpose of determining whether Mr. Blackley could be employed at AID. Mr. Byrne apparently told defense counsel that the report is highly favorable to Mr. Blackley because it concludes that allegations that he received payments in 1993 reportable under the Ethics in Government Act, 18 U.S.C. § 1001, are unfounded.

The Independent Counsel makes three arguments in support of its claim that it does not have to produce these reports under prevailing *Brady Giglio* doctrine. First, to the extent that Mr. Blackley is seeking these materials in order to support his motions to dismiss for lack of prosecutorial jurisdiction or to support dismissal on a selective prosecution basis, the OIC argues that they are not *Brady* because they are not being sought as evidence "material either to guilt or to punishment." *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196. The OIC asserts that even if the reports conclude that no administrative or criminal action should be filed against Mr. Blackley by the respective executive departments or by DOJ, that conclusion is not "material exculpatory evidence" relevant to a determination of Mr. Blackley's guilt or innocence for the crimes with which he has been charged by the grand jury. For the reasons stated in more detail in part 2, below, this court agrees with the Independent Counsel that *Brady/Giglio* production is only required when the materials are being sought to prove defendant free from blame, and not when the defense seeks to obtain a collateral dismissal. This court therefore will not order the release of the reports on the basis that they might demonstrate that this prosecution is contrary to DOJ policy, outside of the Special Division's jurisdictional mandate, or that Mr. Blackley is a target of selective prosecution.

Second, the Independent Counsel asserts that it has reviewed the reports at issue as well as the corresponding witness statements, and, in accordance with its *Brady* obligation, has produced summaries of material exculpatory witness testimony and documents. This court has no reason to believe that the OIC has not done its due diligence in this regard. And, at least as to the reports, the defense has not vigorously contested this assertion by the OIC, as it is not more summaries that it seeks, but rather the reports in their entirety.

The OIC's final argument against production of the reports is arguably the most straightforward—they claim that the reports simply do not contain *Brady* material. Pursuant to this court's order at the October 14, 1997 motions hearing, the OIC has produced, *in camera,* the reports sought by defendant, allowing an independent evaluation as to whether they contain material exculpatory information relevant to guilt or punishment and must be provided to the defendant.

Having now had the opportunity to review the two reports, this court concludes that they do not contain *Brady/Giglio* material. The reports, taken as a whole, do not contain "evidence favorable to the accused that, if suppressed, would deprive the defendant. of a fair trial." *Bagley,* 473 U.S. at 675, 105 S.Ct. at 3379. Nor are there subsections within the reports or even individual statements that, if not disclosed to the defense,

would result in a verdict lacking in trustworthiness. Based upon its *in camera* review, this court will not order the production of the U.S. AID–IG or USDA–IG reports under *Brady.*

## 2. Relevant Government Policies Concerning Prosecution

■ Defense counsel has requested that the OIC provide copies of the policies of the USDA–IG, the USDA General Counsel and the USDA Ethics Officer, as well as the Department of Justice relating to the criteria for making referrals to DOJ of purported violations of the Ethics in Government Act, and that relate to decisions to prosecute individuals for such purported violations. Defendant seeks these policies in order to ascertain whether the USDA has ever referred information concerning a Form SF 278 to DOJ for criminal prosecution, in the hopes of obtaining a dismissal of the charges on a selective prosecution basis, or in support of his claim that the OIC is statutorily bound to follow DOJ's prosecutorial policies. *See* Defendant's Motion to Compel Production of *Brady* Material at 7.

■ This court appreciates defense counsel's candor at oral argument in recognizing that, as among its requests to compel production of *Brady* material, this one has the weakest foundation in the law. The trouble with defendant's claim is that the scope of *Brady* is limited by its own language to "evidence that is material either to guilt or to punishment." *Brady,* 373 U.S. at 87, 83 S.Ct. at 1197. Only material that is *exculpatory* is covered under *Brady*; with exculpatory defined as that which would tend to show freedom from fault, guilt or blame. *See Webster's Third New International Dictionary* (unabridged ed.1965). It is therefore not material that would only support jurisdictional challenges, claims of selective prosecution, or any other collateral attacks on the indictment, because prevailing on those claims would not prove defendant free from fault, guilt or blame.

The general agency policies at issue contain no material specifically addressing Ronald Blackley or any of the events that are the subject of this prosecution. Therefore, these reports can neither tend to exculpate nor help to reduce the penalty against Mr. Blackley. Also, because these manuals were not authored by individuals expected to testify at trial, they need not be disclosed as potential impeachment evidence. That these reports are not being sought in the hopes of proving defendant innocent, but rather to prove that the charges should not have been brought at all, is a matter that defense counsel readily admits [1]. However, whether or not the charges should have been brought by the OIC is a totally distinct question from whether the conduct alleged actually occurred and whether the conduct, if it did occur, violated the law. It is only the second inquiry—the one focused on innocence and guilt—that *Brady* was meant to address. Because the policies are not material to a determination of defendant's guilt or punishment, this court will not order the Independent Counsel to provide copies to the defense.

■ The OIC's alternative argument against compelling production of the policies is equally if not more persuasive to this court. Defendant has not sufficiently explained why the government is required to forward copies of these policies, as opposed to defense counsel obtaining them through their own efforts. For an item to be *Brady,* it must be something that is being "suppress[ed] by the prosecution." *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196. The policies requested by defense counsel are available to the public and something that can be readily obtained by others is, by definition, not "suppressed." *See e.g., United States v. Dijan,* 37 F.3d 398, 402 (8th Cir.1994) (IRS manual not *Brady* because it is public). The OIC is correct when it asserts that it is "not obligated to act as an agent of the defendant and assist in searching for and collecting documents." United States' Opposition at 5. Because the defense is in basically the same

---

1. This assertion comes from defendant's own motion, in which he states "Mr. Blackley is requesting the DOJ's policies and guidelines because, in part, he believes that they will support a selective prosecution claim." Defendant's Reply to the United States' Opposition at 4. *See also* Defendant's Supplemental Memorandum of October 16, 1997 at 1.

position as the OIC to obtain copies of these policies, this court will not order them produced under *Brady*.

3. Grand Jury Testimony and Interview Notes and Memoranda of Sharon Blackley, Ronald Blackley Jr. and Other Witnesses Identified by the OIC

On October 8, 1997, the Independent Counsel provided defense counsel with a list of twenty-four persons whom, if contacted, would be expected to provide information favorable to Ronald Blackley. In this letter, the OIC included synopses of the favorable testimony that they expect these individuals would provide. Defense counsel contends that the OIC has not met its *Brady* obligation through these summaries and is required to produce transcripts of the grand jury testimony as well as interview notes and memoranda. They claim that the synopses are an inaccurate reflection of the exculpatory grand jury testimony, and that it is therefore unfair to restrict the defense to these synopses. In opposition, the Independent Counsel asserts that under *Brady* it is only required to provide information that is "known to the prosecution but unknown to the defense, . . ." *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976). Having provided the summaries, the OIC claims that defendant is not also entitled to the grand jury transcripts and other information because he now has both knowledge of the exculpatory information and the present ability to acquire the specific information through reasonable means.

Whether *Brady* obligates the government to provide a defendant with a grand jury transcript after the government has advised defendant that the witness may have given exculpatory testimony has been addressed by other circuits. In *United States v. Grossman*, 843 F.2d 78 (2d Cir.1988), defendant sought to have his conviction overturned by contending that under *Brady* he should have been provided with the allegedly exculpatory grand jury testimony of a witness. Prior to trial, the government sent defendant a letter informing him that the witness in question may have given exculpatory testimony to the grand jury. The court held that the letter

constituted sufficient disclosure under *Brady* of "information which had been known to the prosecution but unknown to the defense" and determined that the government had "no duty actually to turn over grand jury testimony where the defendant knows of the witness' identity." *Id.* at 85 (citing *United States v. LeRoy*, 687 F.2d 610, 619 (2d Cir. 1982)). The court noted that the rationale underpinning *Brady* is to " 'assure that the defendant will not be denied access to exculpatory information *only known to the government*.' " *Id.* (quoting *LeRoy*, 687 F.2d at 619)). Once the letter was received, the defense at that point "knew or should have known the essential facts permitting him to take advantage of any exculpatory evidence," *id.* (citing *United States v. Gaggi*, 811 F.2d 47, 59 (2d Cir.1987), and the *Brady* burden was thereby satisfied.

Other courts have similarly concluded that the government's *Brady* obligation to disclose exculpatory material does not extend to grand jury transcripts when the defendant has both knowledge of the existence of the exculpatory evidence and the means to acquire and take advantage of the information. *See United States v. Wilson*, 901 F.2d 378, 381 (4th Cir.1990) (no *Brady* violation if the defense is free to question the witness in preparation for trial); *United States v. Hicks*, 848 F.2d 1 (1st Cir.1988) (noting that the statement of a potential witness is not being "suppressed" when the defense has the opportunity to interview the witness); *United States v. Campagnuolo*, 592 F.2d 852, 860–61 (5th Cir.1979).

 Holding aside for the moment the special circumstances concerning the testimony of Charles Fuller, this court concludes that the Independent Counsel is under no obligation to turn over the grand jury testimony from the *Brady* witnesses to the defense. This court has reviewed the October 8, 1997 letter from William Fahey to Sheldon Krantz advising the defense of the existence of the twenty-four witnesses, and concludes that the Independent Counsel has met its *Brady* obligation. First, the letter provides adequate disclosure of the essential facts concerning the exculpatory evidence. The summaries fairly indicate the nature of the excul-

patory testimony that, each witness might offer. Second, the defense now has the present opportunity and ability, with reasonable diligence, to contact these individuals and develop their testimony for trial. That is what *Brady* requires, and nothing more.[2]

Defense's inclusion of Ronald Blackley, Jr. and Sharon Blackley on its list of persons for whom it is entitled to grand jury testimony demonstrates its misconception of how *Brady* operates in this context. First, it strains credulity to believe that defendant was unaware that his son and his wife would provide exculpatory testimony. Second, the defense has had access to these individuals and ample time to acquire the exculpatory information through reasonable efforts, as six months have elapsed from the date of the indictment to the time of the filing of the motion to compel. Nothing has been "suppressed." For the court to order production of the grand jury transcripts for Sharon Blackley and Ron Jr. would be to create a categorical rule requiring the furnishing of such transcripts whenever a witness' name is disclosed by the government pursuant to its *Brady* obligation.

▇▇▇ Defendant's claim of entitlement to the transcripts and notes revolves in large part around counsel's contention that the OIC's "delay" in forwarding *Brady* material has left it without the necessary time or resources to properly develop the exculpatory evidence, jeopardizing the fairness of the upcoming trial. "Disclosure by the government must be made at such a time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case...." *United States v. Pollack*, 534 F.2d 964, 973 (D.C.Cir.1976) Defendant claims that "[t]he 24 witnesses live in different parts of the country, and

some who were in the government have since retired and relocated." Defendant's Supplemental Memorandum at 3. This court disagrees with defendant's claim of unreasonableness and finds no difficulty with the timing of the Independent Counsel's *Brady* disclosure. Three weeks[3] of lead time is sufficient for defense counsel to contact these witnesses and obtain their testimony. Disclosures much closer to-trial have been upheld by this circuit. *See United States v. Tarantino*, 846 F.2d 1384, 1417 (D.C.Cir. 1988) (*Brady* production during trial reasonable because the defense had the opportunity to use the materials); *Pollack*, 534 F.2d at 973–74 (production three days and one day before trial adequate). Also, if this court were to conclude that the timing of the *Brady* disclosures substantially handicapped Mr. Blackley's ability to prepare an effective defense, the proper remedy prior to trial would have been the granting of a continuance rather than ordering production of the requested transcripts. Because this court has already continued this trial, moving it from October 27 to November 18, 1997, defendant has, in a sense, already been awarded the proper relief for this particular *Brady* challenge.

Finally, there is the matter of the grand jury testimony of Charles Fuller, one of the individuals who, according to the indictment, wrote checks to the Blackleys that went unreported on his financial disclosure forms. Mr. Fuller refuses to talk to the defense without a grant of immunity; consequently, the defense is unable to acquire the exculpatory evidence through reasonable means, strengthening the argument that the government should be required to produce the grand jury testimony. The Fuller testimony (and, potentially, many of the other witness statements) calls into question the relation-

**2.** The defense cites *Xydas v. United States*, 445 F.2d 660, 666 n. 16 (D.C.Cir.1971) for the proposition that they are entitled to the grand jury transcripts. However, in *Xydas*, the court did not order the grand jury transcripts produced; rather, they were submitted *in camera*, and only the exculpatory statements were forwarded. The opinion did not squarely address the issue presented here, and this court agrees with the conclusion reached by the overwhelming majority of jurisdictions that have given the matter full consideration: (that there is no general right to

grand jury transcripts as part of a *Brady* disclosure.)

**3.** At the time of the filing of the original Motion to Compel Production of *Brady* Material, there were three weeks remaining before trial. Because this court granted defendant's Motion to Continue, the actual time available to develop these *Brady* witnesses is approximately six weeks.

ship between the duty to turn over exculpatory and impeachment information under *Brady* and the production of witness statements under the Jencks Act, 18 U.S.C. § 3500, which proscribes the subpoena, discovery or inspection of government witness statements or reports until that witness has testified on direct examination at trial. There is division on this question, with some courts proclaiming the primacy of *Brady, see, e.g., United States v. Starusko,* 729 F.2d 256, 265 (3d Cir.1984); *United States v. McVeigh,* 923 F.Supp. 1310, 1315 (D.Colo.1996); *United States v. Poindexter,* 727 F.Supp. 1470, 1485 (D.D.C.1989), while others contend that Jencks takes precedence, *see, e.g., United States v. Presser,* 844 F.2d 1275, 1280–86 (6th Cir.1988); *United States v. Scott,* 524 F.2d 465, 467–68 (5th Cir.1975) (citing supporting cases).

This court declines to choose between the two conflicting approaches, as the debate not squarely before it. The OIC was directed to provide a transcript of the Fuller grand jury testimony so that this court could make an *in camera* determination as to whether it constituted *Brady* material. Having completed its review of the Fuller grand jury transcript, this court concludes that it does not contain any material exculpatory statements or other exculpatory evidence that "is of sufficient significance to result in the denial of the defendant's right to a fair trial." *Agurs,* 427 .U.S. at 108, 96 S.Ct. at 2400. Since there is no exculpatory material, it need not be produced under *Brady.* Consequently, either resolution of the *Brady*/Jencks primacy issue would lead to the same, result: if Jencks controls, the testimony would not need to be produced until after Fuller testifies; if *Brady* is the primary obligation, then the transcript need not be produced because it is not *Brady* material. Therefore, even though Charles Fuller is unavailable to the defense, this court will nonetheless not order the production of his grand jury testimony because the court is satisfied that the transcript is not *Brady* material.

4. Correspondence Relating to Mr. Blackley; the Inadequacy of the List of Brady Witnesses

These two claims will be considered together because they largely allege the same thing; namely, that the Independent Counsel's *Brady* production has been under inclusive.

 In their motions and in oral argument, the parties clash over the manner in which *Brady* disclosures have been handled in this case. Defendant expresses frustration that it has only been able to acquire *Brady* materials through formal requests, though it is well settled that a defendant's failure to request favorable evidence does not relieve the government of its *Brady* obligation. *See Kyles,* 514 U.S. at 436–38, 115 S.Ct. at 1565; *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383–84. Defendant alleges that having to consistently acquire exculpatory evidence by motion places it in an impossible conundrum: if the motion has any specificity to it, the Independent Counsel may avoid its obligation by claiming that the defendant is aware of the exculpatory material, and therefore it cannot be *Brady*; if there is no motion or the motion is overly general, no materials are being produced.

The OIC responds to defendant's charge of under inclusiveness by contending that this claim is based upon nothing more than mere speculation and a general feeling by the defense that there must be something more out there. The OIC correctly notes that *Brady* does have a materiality threshold and that the government is not required to disclose all evidence that could possibly have some remotely favorable impact on a jury's consideration of the case. *See Kyles,* 514 U.S. at 436–38, 115 S.Ct. at 1567 (noting that the Constitution is not violated every time the government fails to or chooses not to disclose evidence that might prove helpful to the defense, and that *Brady* does not require an "open files" policy on the part of the government). The OIC also contends that defense counsel is attempting to use *Brady* as a discovery device, which is not a function contemplated by this constitutional rule of due process. *See Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one. . . .")

The debate concerning Michael Kelly illustrates the conflict between the parties. Mr. Kelly was not on the October 8, 1997 list of witnesses provided by the OIC who, if contacted by the defense, would be expected to provide exculpatory testimony. Defense counsel contends that Mr. Kelly has "very significant" exculpatory information. The OIC supports its decision to not include him on the list by claiming that "[d]efendant has long had full knowledge of Mr. Kelly's existence and the favorable testimony he may provide"—much like Sharon Blackley or Ron Jr.—and therefore is outside the auspices of Brady because he was not "unknown to defendant." *See* United States' Response and Incorporated Memorandum at 1.

This court is in no better position than the parties to determine whether there exists some great body of *Brady* evidence that has not yet been produced by the government, or to resolve disputes as to whether a given witness' potentially exculpatory testimony is "known to the defense" as in the Michael Kelly conflict. This court simply responds to defendant's claim of under inclusiveness by noting that if the sword of Damocles is hanging over the head of one of the two parties, it is hanging over the head of the Independent Counsel. *Brady* is first and foremost a *post-trial* remedy, and the penalty for failing to disclose material exculpatory evidence relevant to a finding of guilt or punishment is the setting aside of a conviction on appeal. If, as defendant argues, the OIC "is engaging in a pattern of intentionally withholding, belatedly providing, and inaccurately summarizing *Brady/Giglio* material," Defendant's Supplemental Memorandum at 1, defendant's ultimate remedy is not this court's granting of a motion to compel, but rather the Court of Appeals' overturning of a guilty verdict, should one be obtained. That possibility should be sufficient to direct the Independent Counsel to comply with both the letter and the spirit of *Brady,* with the reminder that the prosecution has the "affirmative duty to resolve doubtful questions in favor of disclosure." *United States v. Whitehorn,* 710 F.Supp. 803, 827 (D.D.C.1989).

For the reasons stated in this opinion, defendant's motion to compel production of *Brady* Material is DENIED.

SO ORDERED.