**UNITED STATES of America**

v.

**Yeh HSIN–YUNG, et al., Defendants.**

**No. Crim.No.99–425(SSH).**

United States District Court,
District of Columbia.

April 26, 2000.

Kenneth W. Cowgill, Joseph Valder, Asst. U.S. Atty.'s, U.S. Attorney's Office, for District of Columbia, Washington, DC, for plaintiffs.

W. Gregory Spencer, Federal Public Defender, Washington, DC, Allen Orenberg, Storch & Brenner, Washington, DC, Joanne Maria Vasco, Hyattsville, MD, Michael McCarthy, McCarthy & Sullivan, Bowie, MD, for defendants.

OPINION AND ORDER

STANLEY S. HARRIS, District Judge.

Before the Court are eight motions filed by defendants, and one unopposed motion filed by the Government.[1] A hearing on these motions was held on April 19, 2000.[2] Upon consideration of the motions, the oppositions thereto, and the record, the Court denies defendants' motions with the exception of defendants' motion to suppress, which the Court denies in part and grants in part; the Court also grants the Government's unopposed motion. The Court addresses briefly each motion in turn. As the parties are familiar with the facts alleged, the Court will not discuss them at the beginning, although it will discuss relevant facts as necessary for each motion.

### 1. Motion To Dismiss for Lack of Subject Matter Jurisdiction

■ Defendants move to dismiss the indictment for lack of subject matter jurisdiction. In support of their motion, defendants argue that applicable principles of international and constitutional law bar the United States ("U.S.") from asserting jurisdiction over a foreign vessel traveling on the high seas. The Court disagrees with defendants' characterization of the Wing Fung Lung ("WFL") as a "foreign" vessel because the evidence indicates that it was a "stateless" vessel; no flag or other indicium of nationality was apparent on the outside of the WFL, the Coast Guard found flags from five different countries on board the WFL, and the WFL's claim of Taiwanese registry could not be confirmed or denied by Taiwan, which reported that a vessel with the same name was once registered with it but had been destroyed four years ago. *See, e.g., United States v. Alvarez–Mena*, 765 F.2d 1259, 1264 n. 8

---

1. Immediately prior to a hearing held on these motions on April 19, 2000, defendant Lin Jian entered a plea of guilty, pursuant to a plea agreement. The motions filed on his behalf therefore are denied as moot.

2. At the hearing, the Court granted the motion to adopt codefendants' motions, submitted by each of the defendants, as unopposed, to the extent that the motion is applicable to that defendant.

(5th Cir.1985) (vessel that falsely claims a nationality is deemed to be stateless); *see also United States v. Rosero*, 42 F.3d 166, 171–72 & n. 12 (3d Cir.1994) (discussing criteria on statelessness and collecting cases). Indeed, based on this information, the U.S. Government assimilated the ship to stateless status shortly after the Coast Guard boarded the vessel. It is well-settled that international law permits any state to subject stateless vessels on the high seas to its jurisdiction, and the majority of courts hold that this exercise of jurisdiction is valid even in the absence of a nexus between the stateless vessel and the country asserting jurisdiction. *See Alvarez–Mena*, 765 F.2d at 1265; *United States v. Marino–Garcia*, 679 F.2d 1373, 1383 (11th Cir.1982). Because the U.S. "has authority to treat stateless vessels as if they were its own," *United States v. Smith*, 680 F.2d 255, 258 (1st Cir.1982), the Court's exercise of jurisdiction is proper under international law.

■ The Court's exercise of jurisdiction over defendants is also constitutional. It is well-settled that the criminal immigration laws of the U.S. apply extraterritorially. *See, e.g., United States v. Chen*, 2 F.3d 330, 333 (9th Cir.1993) (quoting *United States v. Aguilar*, 883 F.2d 662, 692 (9th Cir.1989)). And, where a defendant's "attempted transaction is aimed at causing criminal acts within the United States," the exercise of extraterritorial jurisdiction over the defendant is consistent with the dictates of due process. *United States v. Davis*, 905 F.2d 245, 249 (9th Cir.1990) (quoting *United States v. Peterson*, 812 F.2d 486, 493 (9th Cir.1987)). In this case, the indictment alleges that defendants attempted to violate U.S. immigration laws by smuggling aliens into the U.S., and the

record supports a finding that the WFL's intended destination was the U.S. Because defendants' alleged criminal transaction would have had a direct effect in the U.S., the Court's exercise of jurisdiction over them is constitutional. Accordingly, defendants' motion to dismiss for lack of jurisdiction is denied.[3]

### 2. Motion To Dismiss Indictment For Improper Venue

■ Defendants move to dismiss the indictment for improper venue. Defendants do not dispute that 18 U.S.C. § 3238 governs venue for offenses not committed in any district:

> The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender or any one of two or more joint offenders, or if no such residence is known the indictment or information may be filed in the District of Columbia.

Defendants construe the statute as allowing venue to lie in the District of Columbia only if defendants were not first arrested or brought into another district and if none of the defendants is known to have resided in another district. Because defendants were first brought into Houston, Texas, defendants contend that the Southern District of Texas is the only proper venue. Alternatively, defendants assert that venue was not established in the District of Co-

**3.** Defendants also argue that the Coast Guard exceeded its authority in boarding the WFL. Based on the testimony at the hearing, however, the Court is satisfied that the Coast Guard's boarding was authorized by 14 U.S.C. § 88, because the Coast Guard acted in response to indications that the WFL was taking on water and sinking. In any event, the type of government conduct alleged by

defendants, if true, does not warrant dismissing the indictment. *See United States v. Rezaq*, 134 F.3d 1121, 1130 (D.C.Cir.1998) (noting that *Ker–Frisbie* doctrine allows courts to exercise jurisdiction over individuals brought into the U.S. by the government by reason of forcible abduction, and that doctrine contains limited exceptions only in cases of "torture, brutality, and similar outrageous conduct").

lumbia when the Government filed informations here on December 20 and 27, 1999, before defendants were brought into any district, because those informations are null documents; Federal Rule of Criminal Procedure 7(a) and (b) provides that a felony may be prosecuted by information only upon waiver by the defendant, but the Government did not obtain the requisite waivers before filing the informations.

First, the Court declines to adopt defendants' construction of the statute. Although the D.C. Circuit has not addressed the construction of § 3238, the Court is persuaded by other circuits which have concluded that "[t]he two clauses of the statute must be read in the disjunctive." Wright 2 Fed.Prac. & Proc.Crim.2d § 304 (West Supp.1999) (citing United States v. Hilger, 867 F.2d 566, 568 (9th Cir.1989); United States v. Layton, 855 F.2d 1388, 1410–11 (9th Cir.1988), rev'd on other grounds). See also United States v. Fraser, 709 F.2d 1556 (6th Cir.1983); United States v. McRary, 616 F.2d 181, 185 (5th Cir.1980); United States v. Hay, 376 F.Supp. 264, 268 n. 2 (D.Colo.1974). The two clauses provide alternative proper venues.[4] Therefore, "[i]f the latter provision is relied on, and defendant is indicted before he is brought into the United States, he may be tried in the district in which he was indicted regardless of whether it is the district in which he is first brought into the United States." Charles A. Wright & Arthur R. Miller, 2 Fed.Prac. & Proc.Crim.2d § 304 (West 1982). Defendants therefore may be tried in the District of Columbia,

even though they were subsequently brought into a different district, if the informations filed against them here are valid.

The Court concludes that the informations are valid and therefore establish venue in the District of Columbia. Defendants misconstrue Fed.R.Crim.P. 7. "Rule 7(b) does not prohibit the *filing* of an information in the absence of waiver of indictment by the defendant. Instead, the rule proscribes *prosecution* without waiver." United States v. Cooper, 956 F.2d 960, 962 (10th Cir.1992) (emphasis in original). See also United States v. Burdix–Dana, 149 F.3d 741, 742 (7th Cir.1998) ("Rule 7(b) does not forbid filing an information without a waiver; it simply establishes that prosecution may not proceed without a valid waiver."); Charles A. Wright & Arthur R. Miller, 1 Fed.Prac. & Proc.Crim.3d § 122 (West 1999). The Court therefore "do[es] not believe that the absence of ... waiver makes the filing of an information a nullity." Burdix–Dana, 149 F.3d at 742. This case is not being prosecuted by information, but rather by indictment which subsequently was returned. The Court finds that the informations are legitimate charging documents that satisfy § 3238, and that venue is proper in the District of Columbia.

### 3. Motion To Dismiss Indictment Pursuant to the Speedy Trial Act

Although all the defendants waived the Speedy Trial Act ("STA"), in court either on February 22 or 23, defendant Li now

---

4. The district court in Layton examined the legislative history of § 3238. See Layton, 519 F.Supp. 942 (N.D.Cal.1981). The statute, which dates back to 1790, originally provided that the only proper venue was the district in which the defendant was arrested or first brought. In 1963, Congress added the second clause providing for venue in the district of the defendant's "last known residence" or the District of Columbia if none. Originally, one of the purposes for the amendment was to provide the Government with a district in which to file an indictment or information before the statute of limitations ran, where an offender remained abroad but was not clearly a fugitive. Layton, 519 F.Supp. at 944; see U.S.Code Cong. and Admin.News, 1963, pp. 660–63. Congress therefore provided alternative venues to add flexibility to the statute.

In a last-minute Addendum to his motion to dismiss for improper venue filed today, defendant Li suggests that this case does not present any of the problems that the amendment was originally enacted to alleviate. The Court, however, finds nothing in the caselaw or in the statute which imposes such a limitation, and the Court sees no reason to limit reliance on the second alternative venue provision to only certain circumstances.

seeks to retract his waiver.[5] He moves to dismiss the indictment pursuant to the STA.[6] Based on the arguments presented in the pleadings and at the April 19 hearing, Li makes three allegations: (1) the Government is in continuing violation of the STA because the information, as well as the arrest warrants based on the information, were invalid; (2) he was not indicted within 30 days after his arrest because he claims he was "arrested" on December 9, 1999, when the Coast Guard boarded the WFL, not the date of his formal arrest on December 27, 1999; and (3) if the Court finds that Li was not arrested until December 27, 1999, Counts 1 and 2 of the superseding indictment must be dismissed because they are based on the same statute which formed the basis of the original indictment but were not contained therein.[7]

■ First, as just discussed, the informations filed were not null documents and thus, the arrest warrants are valid as well. Second, Li was not "arrested" when the Coast Guard boarded the WFL for purposes of the STA. The D.C. Circuit has established that "only an arrest in connection with federal charges triggers § 3161(b) of the Speedy Trial Act." *United States v. Mills*, 964 F.2d 1186, 1193 (D.C.Cir.) (1992) (en banc); *United States*

v. *Rezaq*, 899 F.Supp. 697, 705 (D.D.C. 1995). Li was not arrested pursuant to a warrant in connection with federal charges until December December 27.[8] Because the Court agrees with the Government's calculations in its opposition regarding excluded time under § 3161(h)(1) of the STA, the Court determines that there was no violation of the STA's 30–day deadline.

■ The Court similarly finds no merit in defendants' third contention to dismiss Counts 1 and 2 of the first superseding indictment, filed on February 18, 2000. Section 3161(b) mandates that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." Defendants rely on *United States v. Palomba*, 31 F.3d 1456, 1462–65 (9th Cir.1994), in arguing in essence that an "offense" is a charge arising out of a statute, and therefore, the STA requires dismissal when charges based on the same statute are not brought within 30 days. Here, the new charges indeed were brought more than 30 days after the December 27 arrest, and they are based on the same statute, 8 U.S.C. § 1324, as the

5. He does not, however, object to the trial date previously set, given the constraints in securing the Coast Guard witnesses. Def. Li's Mot. To Dismiss the Indictment Pursuant to the Speedy Trial Act at 3.

6. For the sake of clarity because of the different dates and charging documents that relate to defendant Yeh versus defendants Li and Wang, the Court will refer only to defendant Li when discussing this motion. The reasoning and conclusion, however, also apply to Wang and Yeh.

7. A brief history of relevant events is useful for this motion, because of the time calculations required for the Speedy Trial Act allegations. On December 9, 1999, the Coast Guard boarded the WFL. On December 20, an information was filed in the District of Columbia against defendant Yeh, who was arrested that day pursuant to a warrant. On

December 27, 1999, another information was filed against Yeh (superseding information) and the other three defendants (original information), and on that day, the three other defendants were arrested pursuant to warrants. On January 7, 2000, Yeh was indicted; on January 14, 2000, another indictment was returned as to Yeh (first superseding) and the other three (original indictment). On February 18, 2000, another indictment was returned as to Yeh (second superseding) and the other three (first superseding).

8. Furthermore, other courts have determined that civil detention by the INS does not trigger the STA until the defendant is served with a warrant pursuant to a federal indictment. *E.g., United States v. Cepeda–Luna*, 989 F.2d 353, 356 (9th Cir.1993); *United States v. Reme*, 738 F.2d 1156, 1162 (11th Cir.1984). Thus, any detention for INS purposes also did not trigger the STA.

original charges.[9] The Court, determines, however, charges are not necessarily the same offenses simply because they are based on the same statute; here, the new charges are distinct offenses from the original charges, as they are brought under different subsections of 8 U.S.C. § 1324, they have different elements, proscribe different forms of conduct, and carry different penalties. At least one Court of Appeals has made this same distinction in declining to apply *Palomba* blindly. *United States v. Bailey*, 111 F.3d 1229, 1236 n. 6 (5th Cir.1997) ("unlike the situation in *Palomba*, each charge in the instant action is different despite the shared reference to § 662 because the information charges a misdemeanor and the indictment charges a felony"). *Cf. United States v. Napolitano*, 761 F.2d 135, 137–139 (2d Cir.1985) (holding that charges that are added after 30 days of the arrest need not be dismissed simply because they arise out of the same facts alleged in the original complaint or were known or should have been known at the time of the complaint). The Court therefore denies defendants' motion to dismiss Counts 1 and 2 of the superseding indictment.

**4. Motion To Dismiss Due to the Government's Release of Material Witnesses**

■ Over two hundred witnesses to the events on board the WFL were Chinese nationals who were returned to China; these witnesses therefore cannot testify at trial. Defendants argue that the Government's actions to return these witnesses violated the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment.

The Court disagrees. The Supreme Court has held that "[t]he mere fact that the Government deports ... witnesses is not sufficient to establish a violation of the Compulsory Process Clause of the Sixth Amendment or the Due Process Clause of the Fifth Amendment.... Sanctions may be imposed on the Government for deporting witnesses only if the criminal defendant makes a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." *United States v. Valenzuela–Bernal*, 458 U.S. 858, 872–73, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). Furthermore, the Executive Branch may promptly deport witnesses upon its "good-faith determination that they possess no evidence favorable to the defendant in a criminal prosecution." *Id.* at 873, 102 S.Ct. 3440. Although prompt deportation may prevent a defendant from interviewing the witnesses to determine what favorable evidence they possess, and thus, defendants are not expected to render a detailed description of the lost testimony, "this does not relieve the defendant of the duty to make some showing of materiality." *Id.* at 874, 102 S.Ct. 3440. Defendants do not show any bad faith by the Government, nor do they make a "plausible showing" of material and favorable testimony by the returned witnesses. The Government maintains that INS agents interviewed all the returned persons, many of whom did not furnish any information; of those who did furnish information, the INS agents took notes, which were reviewed by two Assistant United States Attorneys and found to contain no information material or helpful to the defense. Because nothing shows material or favorable testimony, the Court denies the motion.

---

9. The original indictment as to Li, filed on January 14, 2000, contained two charges under 8 U.S.C. § 1324, relating to attempting to bring a named alien to the U.S. at a place other than a designated port of entry. The first superseding indictment as to Li filed on February 18, 2000, contains four charges against Li: the two original charges as well as two new charges, also under 8 U.S.C. § 1324, relating to conspiracy to bring aliens to the U.S. for profit at a place other than a designated port of entry.

### 5. Motion To Suppress[10]

█ Defendant Yeh moves to suppress statements that he made to Coast Guardsman Andrew Ha on the ground that they violated his *Miranda* rights.[11] Yeh made these statements over the course of five conversations with Ha while the Coast Guard was on board the WFL between December 9 and 11, 1999. The Government concedes that defendant Yeh was not read his *Miranda* rights before any of those conversations. *Miranda* warnings are required whenever a suspect is both in custody and subject to interrogation.[12] *See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Illinois v. Perkins*, 496 U.S. 292, 297, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990).

### A. The Custody Requirement

In determining whether a suspect is in "custody," a court must look at the totality of the circumstances and assess "whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (internal quotations omitted). The inquiry is an objective one, and must be assessed from the perspective of a reasonable person in the suspect's position. *See Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). When defendant Yeh made the relevant statements to Coast Guardsman Ha, he was isolated from the rest of the WFL crew and passengers, and restrained against the rail of

the WFL with two sets of steel handcuffs. At some point between December 9th and 11th, the Coast Guard also placed leg shackles on him. Lt.(jg.) Borowczak testified that this level of restraint was necessary as a result of defendant Yeh's assaultive behavior toward Coast Guard officers on December 9th. Notwithstanding the legitimate need for those safety measures, the Court finds that defendant Yeh was in custody for *Miranda* purposes because his freedom of movement was completely restricted, and he was isolated from the rest of the WFL crew and passengers, during the entire two-day period in which he made his statements. Although the Government cites a number of cases for the proposition that the Coast Guard's routine boarding of American vessels on the high seas, and routine questioning of individuals on board those vessels, do not give rise to custodial detention, *see* Gov't Opp'n to Mot. To Suppress at 10–14, those cases are distinguishable because the situation on board the WFL exceeded that involved in a routine encounter with an American vessel on the high seas. Importantly, none of the cases cited by the Government involved the Coast Guard's separating and restraining an individual for a prolonged period of time, much less with steel handcuffs and leg shackles.

The Government urges the Court to use a four-part test adopted by the Fifth and Eleventh Circuits for determining whether the Coast Guard's boarding had "metamorphosed" into a custodial detention at

---

10. Defendants have withdrawn their previously-filed motion to suppress identification evidence.

11. The Government has indicated that it will not use any statements made by defendants Yeh, Li, and Wang to Lt.(jg.) Robert Borowczak or Special Agent Gerard Puckerin in its case-in-chief. Accordingly, defendants Li's and Wang's motions to suppress are denied as moot, as is that portion of defendant Yeh's motion pertaining to his statements to Lt.(jg.) Borowczak and Special Agent Puckerin.

12. The Court notes, however, that in *U.S. v. Dickerson*, 166 F.3d 667, 680–92 (4th Cir.

1999), the Fourth Circuit concluded that *Miranda* warnings are not required as long as a defendant's statements are voluntary; the court reasoned that *Miranda* warnings are not required by the Constitution, and that in response to the *Miranda* decision, Congress properly enacted 18 U.S.C. § 3501, which restores voluntariness as the test for admitting confessions in federal court. *See also United States v. Quinn*, 123 F.3d 1415, 1424 (11th Cir.1997). The Supreme Court has granted certiorari in *Dickerson*. —— U.S. ——, 120 S.Ct. 578, 145 L.Ed.2d 481 (1999).

the time of questioning. This test requires the Court to weigh:

(1) whether probable cause to arrest the defendant had arisen; (2) whether the interrogating officer subjectively intended a detention beyond that needed for a routine stop and search; (3) whether the defendant subjectively believed that his freedom was restricted so beyond the customary that he was imminently subject to arrest; and (4) whether the investigation had become accusatory and focused on the defendant.

United States v. Magdaniel–Mora, 746 F.2d 715, 723 (11th Cir.1984) (citing United States v. Warren, 578 F.2d 1058, 1071–72 (5th Cir.1978)). Applying this test still yields the conclusion that defendant Yeh was in custody. First, probable cause to arrest defendant Yeh had already arisen, if not for attempted smuggling of aliens then for assault; when the Coast Guard boarded the WFL, defendant Yeh allegedly attacked two officers and, at one point, grabbed an officer's gun and fired a shot at him. See Gov't Opp'n to Mot. To Dismiss at 10. Second, although the Government alleges that the Coast Guard had not placed defendant Yeh under arrest, Coast Guard officials still "subjectively intended" the level of restraint to which he was subjected, which plainly exceeded that necessary for a routine stop and search. Third, the testimony establishes that defendant Yeh probably believed that he was imminently subject to arrest because at one point he stated that he wanted a lawyer if his statements were going to be used against him. As applied, the fourth factor does not support a finding of custody because Lt.(jg.) Borowczak testified that the Coast Guard was not conducting a criminal investigation focused on defendant Yeh at the time. Nevertheless, on balance, the relevant factors under the Government's test weigh in favor of a determination that defendant Yeh was in custody.

## B. The Interrogation Requirement

■ Under Miranda's second prong, interrogation "must reflect a measure of compulsion above and beyond that inherent in custody itself." Rhode Island v. Innis, 446 U.S. 291, 300, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). Thus, "the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." Id. at 301, 100 S.Ct. 1682; accord United States v. Bogle, 114 F.3d 1271, 1275 (D.C.Cir.1997). As discussed, defendant Yeh made a number of statements to Coast Guardsman Ha.[13] On December 9th, he discussed his alleged assault of Coast Guard officers earlier that day with Coast Guardsman Ha, and on December 10th, he told Ha where certain documents relating to the WFL were located. On both occasions, however, defendant Yeh did not make his statements in response to any questions or prompting by Ha.[14] Because statements volunteered by a person in custody are not subject to Miranda requirements, Miranda, 384 U.S. at 479, 86 S.Ct. 1602, defendant Yeh's statements to Ha on December 9th and 10th are admissible.[15]

---

13. Because Coast Guardsman Ha was the only Mandarin-speaking Coast Guardsman on board the U.S.S. Munro, he was the only person capable of communicating with defendants, who did not speak English. Ha testified that he would immediately report the substance of each conversation he had with Yeh to Coast Guard officers on board the WFL; those officers would then either write down what Ha had told them, or radio it back to the U.S.S. Munro.

14. Although Coast Guardsman Ha asked defendant Yeh how he was doing at the start of each conversation between December 9th and 11th, this inquiry did not amount to "interrogation" because it was not reasonably likely to lead to an incriminating response.

15. On December 10th, defendant Yeh also made statements during a conversation in which Lt.(jg.) Borowczak asked questions through Coast Guardsman Ha. As already discussed, the Government does not intend to use these statements in its case-in-chief. Defendant Yeh, however, contends that this conversation is still relevant to his motion because, at one point, he told Ha and Borowczak that if his statements were going to be used against him, he wanted a lawyer; Yeh

On December 11th, defendant Yeh made statements to Coast Guardsman Ha over the course of three separate conversations. In one conversation, Ha began to talk to Yeh about the state of the WFL's engines, and Yeh apparently identified which engines were broken. Although Ha's testimony did not specify what he asked to elicit this information, his question (whatever its wording) did not constitute interrogation because it sought background information about the condition of the WFL. This information might have been helpful for purposes of performing repairs to the vessel and ensuring the overall safety of those on board.

Similarly, during another conversation on December 11th, Ha inquired into why the WFL had been taking on water; Yeh responded that he did not know. As with Ha's question about the engines, this question was not "interrogation" because it sought information about the condition of the vessel.[16] At some point during this conversation, however, Ha told defendant Yeh that, while following the WFL, the Coast Guard had observed it make a 360° turn on its radar. When Ha asked him why the ship had made this erratic maneuver, Yeh responded that they had wanted to change course to try to evade the Coast Guard. The Court finds that Ha's question constitutes interrogation because the incriminating nature of the WFL's 360° turn and otherwise erratic maneuvers was obvious—the maneuvers evidenced defendants' desire to evade capture and, by extension, their awareness of the illegality of their conduct. Moreover, when Ha asked this question, the Coast Guard was aware of the smuggling activity on board the WFL; even though the Coast Guard

was not targeting Yeh in any sort of criminal investigation, Lt.(jg.) Borowczak testified that he had suspected defendants were trying to smuggle the migrants into the U.S., and Ha testified that he had suspected Yeh was the leader of the operation. Given this context, Ha's question about the WFL's course was reasonably likely to elicit an incriminating response. Thus, defendant Yeh's response on that subject must be suppressed as the product of custodial interrogation.

During their last conversation on December 11th, Ha went over to Yeh and began telling him that he was tired because he was working very hard. During this conversation, Yeh took out his wallet and showed Ha a photograph of him and his girlfriend in his car; Yeh also showed Ha his three passports (two from Taiwan, one from China). Yeh told Ha that he worked for a boat company. Ha asked Yeh if he owned the WFL, and Yeh responded that all of the migrants owned the WFL. Yeh told Ha about his plans to take the migrants to the U.S., and sail back to China, from where he would then fly to Taiwan; Ha testified that he did not ask Yeh about his plans to go to the U.S., and then on to China and Taiwan.

Yeh's statement regarding ownership of the ship must be suppressed because it was made in response to interrogation; Ha's question about ownership was reasonably likely to elicit an incriminating response because the information it sought could have confirmed the Coast Guard's suspicions about Yeh's control over both the WFL and the smuggling activity on board the WFL. *See United States v. Henley*, 984 F.2d 1040, 1042 (9th Cir.1993) (defendant subject to interrogation where

argues that this amounts to an invocation of his *Miranda* right to counsel. The Court disagrees that this statement was sufficient to invoke his *Miranda* right to counsel because it was not a clear and unequivocal request. *See Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) ("if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances

would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning.").

16. Yeh also commented about the WFL's fuel status. Because Yeh volunteered this statement, it was not the product of interrogation.

law enforcement questioned defendant about ownership of vehicle and surrounding circumstances made it reasonably likely that question would lead to incriminating response); *United States v. Monzon,* 869 F.2d 338, 342 (7th Cir.1989) (similar). Defendant Yeh's subsequent statement about his plans to drop the migrants off in the U.S. and head back to China and Taiwan must also be suppressed as the product of custodial interrogation. Although Ha testified that he did not ask Yeh any questions about his plans, Ha also testified that Yeh began to talk about those plans after responding to Ha's question about the ship's ownership. Ha's testimony does not indicate that either he or Yeh made any intervening statements; rather, Yeh's discussion of his plans appears to have been a continuation of his statement that all of the migrants owned the WFL because he described his intentions with respect to both the migrants (drop them off in the U.S.) and the WFL (sail it back to China). Because the record suggests that Yeh's statement about his plans was a continuation of his response to Ha's question, the Court concludes that it was also the product of custodial interrogation and must be suppressed.

▆ Defendant Yeh also argues that all of his statements to Coast Guardsman Ha between December 9th and 11th violated the Due Process Clause because they were not made voluntarily. In determining whether a defendant's statements were voluntary, a court must assess whether, under the totality of the circumstances, law enforcement officials obtained the evidence by overbearing the will of the accused. *See Arizona v. Fulminante,* 499 U.S. 279, 285–88, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The Supreme Court has emphasized that some form of government overreaching is required for a statement to be involuntary. *See Colorado v. Connelly,* 479 U.S. 157, 163–64, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) ("Absent police

conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law."). There is no evidence of government overreaching in this case because the Coast Guard's conduct was proportional to the dangers it faced on board the WFL, and the questions posed by Coast Guardsman Ha were not coercive. Yeh did not display any signs of feeling pressured or coerced during his multiple conversations with Ha. To the contrary, according to Ha's uncontroverted testimony, Yeh appeared to be at ease in speaking with him; at one point, as noted, Yeh even showed Ha a photograph of his girlfriend and discussed his life back home. In sum, defendant Yeh's will was hardly "overborne"; his statements were voluntary.

## 6. Discovery-related Motions

In response to defendants' multiple discovery-related motions, the Government has responded to most of the requests by identifying (a) those discovery requests with which it has already complied or will comply, (b) those requests with which it cannot comply because it does not possess the desired material or information, (c) those requests which seek internal Government documents which are not discoverable under Fed.R.Crim.P. 16(a)(2), and (d) those requests which seek Jencks material and will be disclosed at the time of trial.[17] To the extent that defendants request information in those four categories, the Court denies or denies as moot their motions. The Court addresses in turn defendants' eight remaining discovery requests. The Government also filed a motion for reciprocal discovery, which defendants indicated at the April 19 hearing that they did not oppose; the Court therefore grants the Government's motion for reciprocal discovery.

---

**17.** Items that fall into each of these four categories are listed in the correspondingly-let-

tered Addenda A through D to the Government's opposition.

## A. Request for *Brady* Material

Defendants Wang and Li request all evidence that is discoverable under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[18] The Government avers that it is not aware of any *Brady* material that it has not already disclosed to defendants. As defendants have not provided any reason to doubt the accuracy of this statement, the request for *Brady* material is denied as moot.

## B. Statements to Law Enforcement by Other Defendants

■ Defendants request that the Government disclose all statements made by their codefendants to law enforcement, and argue that Fed.R.Crim.P. 16(a)(1) requires this disclosure. The Court disagrees; Rule 16(a)(1) does not require disclosure of codefendant statements because, "[w]hile it mentions several items, including statements made by a defendant, it makes no mention of codefendants' statements." *United States v. Rivera,* 6 F.3d 431, 439 & n. 6 (7th Cir.1993) (citing *United States v. Disston,* 612 F.2d 1035, 1037 (7th Cir. 1980)); *see also United States v. Heatley,* 994 F.Supp. 483, 490 (S.D.N.Y.1998). Accordingly, defendants' request is denied.

## C. Defendants' Statements to Non–Law Enforcement Witnesses

■ Defendants also request discovery of all statements made by them, including the "substance" of any oral statements, which the Government intends to introduce at trial. The Government opposes this request to the extent it covers statements made to non-law enforcement persons on the ground that such statements are prohibited from pretrial discovery under the Jencks Act, 18 U.S.C. § 3500. The Government's objection is well-founded. Rule 16(a)(2) expressly prohibits dis-

covery of the statements of government witnesses or prospective government witnesses except as provided by the Jencks Act, which does not require disclosure of those statements until after the witness has testified on direct examination. *See United States v. Tarantino,* 846 F.2d 1384, 1414 (D.C.Cir.1988). Thus, statements by government witnesses which contain statements made by a defendant are not discoverable under Rule 16, but are subject to disclosure only under the Jencks Act. *See United States v. Pollack,* 534 F.2d 964, 976 (D.C.Cir.1976). Thus, defendants are not entitled to pretrial disclosure of their statements to the extent they are contained in the statements of Government lay witnesses.

## D. Names and Addresses of Witnesses

■ Defendants request the names and addresses of prospective Government witnesses.[19] A criminal defendant in a non-capital case, however, has no right to discover the identity of prospective Government witnesses. *See Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977); *United States v. Bolden,* 514 F.2d 1301, 1312 (D.C.Cir.1975). Rather, it is within the district court's discretion to order disclosure of the Government's witness list "upon a showing of compelling need." *United States v. Madeoy,* 652 F.Supp. 371, 375 (D.D.C.1987); *see also United States v. White,* 116 F.3d 903, 918 (D.C.Cir.1997) (citing *Madeoy* ). Because defendants have not made such a showing, their request is denied.

## E. Names and Addresses of Witnesses Who Will Not Be Called by the Government

■ Defendants seek the name and last known address of every witness to the

---

18. Defendant Yeh has withdrawn his Motion for Exculpatory Information.

19. In support of their request, defendants cite the Supreme Court's decision in *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). *Roviaro,* however, governs the disclosure of the identity of a govern-

ment informant, which is privileged in certain situations in order to further "the public interest in law enforcement." *Roviaro,* 353 U.S. at 59, 77 S.Ct. 623, 1 L.Ed.2d 639. Because this case does not involve government "informants," *Roviaro* is inapposite.

offenses charged who will not be called as a Government witness. The Court denies defendants' request. "There is no statutory basis for granting such broad requests," and such a request "far exceed[s] the parameters of Rule 16(a)(1)(C)." *United States v. Boffa,* 513 F.Supp. 444, 502 (D.Del.1980). While courts may in their discretion order the Government to produce such a list of witnesses, *see United States v. Cadet,* 727 F.2d 1453 (9th Cir. 1984), the Court sees no valid basis for exercising such discretion here. Defendants give no reason for needing this information, nor do they assert that the witnesses have exculpatory information, which would require that the list be produced under the *Brady* doctrine.

### F. Information on the Direction of the WFL

Defendants seek rough notes, event reports, intelligence reports, or any other materials in the Government's possession which discuss the possibility that the WFL was heading for Mexico or Guatemala. The Government is not aware that such documents exist but cannot be certain. The Government is willing, however, to stipulate that "the WFL was generally heading toward Guatemala at the time it was found by the Coast Guard" with regard to the vessel's actual direction of movement, but not the ship's intended destination. Govt.Opp. to Defendant's Various Motions for Discovery at 15. The Government does not stipulate to the various legal conclusions made in connection with this discovery request. On this basis, the Court denies defendants' motion.

### G. Timing of Disclosure of Jencks Material

 Defendants request that Jencks material be produced "reasonably in advance" of trial. The Court denies defendants' motion. The statute is clear that

**20.** The Government addresses this request in its Addenda A–D, and to the extent that the motion seeks those items, the Court accord-

Jencks material shall not be the subject of subpoena, discovery, or inspection "until the witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). *See Tarantino,* 846 F.2d at 1414–15 ("Only after those witnesses themselves testified does the Jencks Act give the defendants access to their statements."). While "trial judges, with the consent of the Government, routinely fashion discovery procedures that entail production of Jencks material before trial or prior to direct examination," *id.* at 1415 n. 12, the Government strongly opposes defendants' request here. The Court declines to require them to do more than the statute requires, but relies on the Government's intention to "give all of the *Jencks* material as early as possible," though no earlier than when a jury has been sworn and the trial is certain to proceed. Govt. Opp. to Defendant's Various Motions for Discovery at 17.

### H. "Bill of Particulars" Request

The second portion of defendant Li's discovery request # 2, which his codefendants join, appears to make a request separate from the first portion, though intended to be related. The first portion seeks "copies of any arrest reports, note, and dispatch tapes or any other tapes relating to the circumstances surrounding Li's arrest or questioning." [20] It then continues:

> Specifically, Li requests the Government to separate and identify those documents from among the group of documents already provided to Li allegedly recovered from the Yong Feng Xiang, which the Government intends to maintain at trial have any connection to, or were created by Li or relate to any of the actions Li is alleged to have taken in China before boarding the Yong Feng Xiang, or during the sea voyage of the Yong Feng Xiang which pertain to this case.

ingly denied or denied as moot defendants' motion earlier in this Opinion and Order.

The Government construes this request as a motion for a bill of particulars, in that it seeks the Government's theory of the case and identification of its evidence. Construed as such, the Government contends that the Court should deny the request because sufficient notice and specification of the charges have already been given. *See United States v. Butler,* 822 F.2d 1191, 1193 (D.C.Cir.1987).

■ While defendants' request is not cast in the typical form for a motion for bill of particulars brought under Fed. R.Crim P. 7(f), the Court will construe it as such, and the Court agrees that the request should be denied. A court should grant a motion for bill of particulars when "necessary to prevent unfair surprise at trial." *United States v. Ramirez,* 54 F.Supp.2d 25, 29 (D.D.C.1999) (internal quotation omitted). If the indictment is sufficiently specific, however, or if the requested information is available in some other form, then a bill of particulars is not required. *Butler,* 822 F.2d at 1193; *see also Wong Tai v. United States,* 273 U.S. 77, 82, 47 S.Ct. 300, 71 L.Ed. 545 (1927) (among other deficiencies, the motion called "for too much details of evidence"). Here, the Court finds that the multiple charging documents are sufficiently specific to ensure that the defendants understand the charges, can prepare a defense, and be protected against retrial. "A bill of particular is not a discovery tool or a devise for allowing the defense to preview the Government's theories or evidence. It properly includes clarification of the indictment, not the Government's proof of its case." *Ramirez,* 54 F.Supp.2d at 29. The Court therefore denies the motion.

### 7. Motion To Sever Defendants

■ Defendants move for severance. The decision to sever involves "weighing prejudice to the defendant against the obviously important considerations of justice and expedition in judicial administration." *Drew v. United States,* 331 F.2d 85, 88 (D.C.Cir.1964). The Court finds that multiple reasons weigh against severance in the interest of expedition and justice: for example, defendants are charged with involvement in the same criminal action and difficulties abound with scheduling key witnesses who serve on an active Coast Guard cutter. Defendants have not shown sufficient prejudice. The Court therefore denies the motion, which, in this case, borders on the frivolous.

### 8. Motion for Pretrial Determination on Admissibility of Co–Conspirator Statements

■ Defendants request that the Court determine the admissibility of alleged co-conspirator statements in a pretrial hearing. To admit a co-conspirator statement, the district court must find, by a preponderance of the evidence, that it fits within the definition of Rule 801(d)(2)(E). *United States v. Gatling,* 96 F.3d 1511, 1520 (D.C.Cir.1996). As to when a court must make this determination, the D.C. Circuit has stated that "the better practice is for the court to determine before the hearsay evidence is admitted that the evidence independent of the hearsay testimony proves the existence of the conspiracy sufficiently to justify admission of the hearsay declarations." *United States v. Jackson,* 627 F.2d 1198, 1218 (D.C.Cir.1980). However, "[g]iven the myriad of difficulties that surround the availability of witnesses, it is just impractical in many cases for a court to comply strictly with the preferred order of proof.... As a concession to such practical impediments that arise during trial, the court is vested with considerable discretion to admit particular items of evidence 'subject to connection.'" *Id.* The Court agrees largely with the reasons set forth in the Government's opposition, that having a pretrial hearing essentially would create a time-consuming mini-trial before the trial. The Court therefore denies the motion and will allow the Government to prove admissibility at trial subject to connection.

Accordingly, it hereby is

ORDERED, that defendants' motion to dismiss for lack of subject matter jurisdiction is denied. It hereby further is

ORDERED, that defendants' motion to dismiss for improper venue is denied. It hereby further is

ORDERED, that defendants' motion to dismiss pursuant to the Speedy Trial Act is denied. It hereby further is

ORDERED, that defendants' motion to dismiss due to the Government's release of material witnesses is denied. It hereby further is

ORDERED, that defendants' motion to suppress is granted in part, and denied in part, as discussed in Part 5 of this Opinion and Order. It hereby further is

ORDERED, that defendants' discovery-related motions are denied or denied as moot as discussed in Part 6 of this Opinion and Order. It hereby further is

ORDERED, that defendants' motion to sever is denied. It hereby further is

ORDERED, that defendants' motion for pretrial determination on admissibility of co-conspirator statements is denied. It hereby further is

ORDERED, that the Government's motion for reciprocal discovery is granted.

SO ORDERED.